**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | | |
|---|---|---|
| MOUNTAINEER MOTORS OF LENOIR, LLC, D/B/A, CAR GUYS MOUNTAINEER MOTORS, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED, | ) ) ) ) ) ) | Civil Action No.: |
| Plaintiffs, | ) ) | **COMPLAINT** |
| v. | ) ) | Claims under North Carolina Statutory and |
| CARVANA, LLC; CARVANA & COMPANY; CARVANA CARS, LLC; CARVANA AND COMPANY OF NC LLC; CARVANA FAC LLC; CARVANA LOGISTICS LLC; and DOES 1 THROUGH 10 | ) ) ) ) ) ) ) ) ) | Common Law Unfair and Deceptive Trade Practices, the Federal Lanham Act, and N.C.G.S § 20-308.1  **CLASS ACTION**  **JURY TRIAL REQUESTED** |
| Defendants. | | |

Comes Now Plaintiff, Mountaineer Motors of Lenoir LLC (herein "Plaintiff"), individually and on behalf of a class of all others similarly situated, by and through their undersigned counsel, file this Complaint against Defendants, Carvana, LLC; Carvana & Company; Carvana Cars, LLC; Carvana and Company of NC LLC; Carvana Fac LLC and Carvana Logistics LLC and DOES 1 through 10 (collectively "Defendants" or "Carvana") and allege as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action as an affected member of a class under Rule 23 of the Federal Rule of Civil Procedure. Plaintiff is part of a class of duly licensed used motor vehicle dealers in North Carolina, as well as the larger class is duly licensed used motor vehicle dealers

nationally. Their businesses have been adversely impacted by a pattern of unfair and deceptive trade practices by Defendants' sales of used motor vehicles.

2.  According to the North Carolina Department of Motor Vehicles (hereinafter "the Department" or "DMV"), Carvana has incurred a series of infractions of dealer licensing laws for—among others—not delivering the vehicle title to the Department of Motor Vehicles on time and for improperly issuing out of state temporary tags and plates to buyers who had no connection to the states from which the temporary tags and plates were issued.

3.  These actions have affected consumers with newly purchased vehicles they cannot drive until Carvana resolves the previously mentioned issues. Carvana takes unreasonable amounts of time, sometimes weeks or even months, to resolve vehicle title issues and even requests the consumer to incur additional costs that were not initially disclosed.

4.  In addition, Carvana engages in deceptive advertising practices such as announcing to the public through their website they have used vehicles for sale, available in locations such as Hickory, where Defendant is unlicensed and/or has no authorized salesroom. They do this without disclosing to the customer or potential customer that the unit may be in another location, county or even another state. Carvana also advertises used vehicles for sale that third parties own, without disclosing this critical factor to potential customers. Through these deceptive actions, Defendants have lured away customers and potential customers from Plaintiff and class members, causing them losses and harm, while Defendant unfairly gains market advantage.

5.  Plaintiff–and those similarly situated—have and continue to suffer damages due to Carvana's regular practices of avoiding the administrative costs of obeying regulations and advertising laws to take sales away from legitimate dealers. Accordingly, Plaintiff and Class Members file this complaint against Carvana for violations of the North Carolina Unfair and

Deceptive Trade Practices Act, the North Carolina Common Law, the Federal Lanham Act, and the North Carolina Motor Vehicle Dealers Licensing Laws.

6. According to a Cross-Sell article, Carvana has impacted the automotive industry by committing market share robbery from many used car retailers nationwide. In North Carolina, Carvana has surpassed retailers and has started cutting into the traditional retailers' used car market share.

7. For example, in the Raleigh market, the franchised dealers Capitol Ford and Hendrick Toyota lost 306 and 141 used vehicle sales in 2018, respectively. In March 2019, Carvana passed Capitol Ford in used car vehicle sales for the first time. And by the end of 2019, they crept into the top three of North Carolina's highest-selling automotive retailers.[1]

## PARTIES

8. Plaintiff, Mountaineer Motors of Lenoir, LLC, is a domestic corporation, organized and existing under and by the laws of the State of North Carolina, with its principal place of business at 1447 Morganton Blvd, Lenoir, NC 28645. Mountaineer Motors of Lenoir, LLC also does business as Car Guys Mountaineer Motors (herein "Plaintiff").

9. Upon information and belief, Defendant Carvana, LLC is a Delaware corporation with its principal offices in Arizona and registered in North Carolina as a Foreign Limited Liability that may be served through its registered agent, Corporation Service Company, at 2626 Glenwood Ave Ste 550, Raleigh, NC 27608.

10. Upon information and belief, Defendant Carvana & Company is a North Carolina domestic business corporation and may be served through its registered agent Andre L. Carvana 741-b North Avalon Rd. Winston Salem, NC 27104.

---

[1] By Admin; "Carvana Market Takeover: Raleigh, NC"; Cross Sell; (February 27, 2020); https://blog.cross-sell.com/blog/carvana-market-takeover-raleigh-nc.

11. Upon information and belief, Defendant Carvana and Company of NC LLC is registered in North Carolina as a domestic Limited Liability Company and may be served by its registered agent Andre L Carvana in 952 West Fourth Street Winston-Salem, NC 27101-2558.

12. Upon information and belief, Defendant Carvana Fac LLC is incorporated in Delaware and registered in North Carolina as a Foreign Limited Liability Company. It may be served by its registered agent, "Corporation Service Company," at 2626 Glenwood Ave Ste 550 Raleigh, NC 27608.

13. Upon information and belief, Defendant Carvana Logistics LLC is incorporated in Delaware and registered in North Carolina as a Foreign Limited Liability Company. It may be served by its registered agent named "Corporation Service Company" at 2626 Glenwood Ave Ste 550 Raleigh, NC 27608.

14. Upon Information and belief, Defendant Carvana Cars, LLC is incorporated in Delaware and registered in North Carolina as a Foreign Limited Liability Company. It may be served through its registered agent Corporation Service Company at 2626 Glenwood Ave Ste 550, Raleigh, NC 27608.

15. Plaintiff is without sufficient information of all the actual names, capacities, relationships, and extent of participation in the conduct herein alleged, of the Defendants sued herein as Does 1 through 10, inclusive, but on information and belief alleges that said Defendants are legally responsible for the conduct, the business acts, and unlawful, unfair, and deceptive practices alleged herein, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege the actual names and capacities of the Doe Defendants when ascertained as permitted by the laws of the State of North Carolina.

## JURISDICTION AND VENUE

16. Venue in the Western District of North Carolina, Statesville Division, is proper in because the named plaintiff is a business operating in Caldwell County, because a substantial part of the causes of action arose in Caldwell County, Defendant usually does business in Caldwell County, and Plaintiff resides in Caldwell County. Further, Plaintiff has asserted a Federal private right of action in the Lanham Act, which has concurrent State and Federal Jurisdiction. Finally, due to the nature of both proposed classes in this suit, Plaintiff has a good faith belief that the jurisdictional provisions of the Class Action Fairness Act will apply to this matter, which necessitates federal venue and jurisdiction.

17. Personal jurisdiction exists over Defendants in that they have engaged in substantial activity within North Carolina. This is true for the area constituting the Western District and Statesville Division. They have maintained continuous and systematic contacts within the State of North Carolina, and on information and belief, have made targeted advertisements and sold thousands of vehicles to North Carolina residents.

## FACTUAL ALLEGATIONS

18. Since 2007, Plaintiff has operated as a used motor vehicle dealer in Caldwell County.

19. § 20-285 of Article 12 on Motor Vehicles and Manufacturing Licensing laws declares North Carolina's public policy by legislation on requisites to operate as a used motor vehicle dealer in North Carolina. Specifically, § 20-285, titled *Regulation of Motor Vehicle Distribution in Public Interest,* declares that:

> [T]he distribution of motor vehicles in the State of North Carolina vitally affects the general economy of the State and the public interest and public welfare, and in the exercise of its police power, it is necessary to regulate and license motor vehicle manufacturers, distributors, dealers, salesmen, and their representatives doing business in North Carolina, **in order to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this State**.

(Emphasis added.)

20. Based on information and belief, Carvana entered the North Carolina used vehicle dealer market through their usual national-marketing practice, which is through targeted advertisements on platforms such as television, the internet, and social media platforms, and the use of used vehicle sales marketing by entities such as craigslist.com, autotrader.com or through its website portal, carvana.com. In these advertisements, Carvana portrays a vast catalog of options with the availability of the exact model the consumer wants. Carvana deceptively does this since it advertises it has units available within a specific county or area—such as Hickory—where it does not have a licensed dealership. Carvana may have those units in another location, county, city, or even another state. In many instances, Carvana sells cars without disclosing this critical fact to the consumer.

21. Carvana engages in unfair competition and misappropriates a commercial advantage by falsely advertising to the consuming public that they have units available within towns like Hickory and across North Carolina and the entire United States, where they do not have a licensed dealership and without disclosing that Carvana may have those units in some other location, county, city, or even on another state.

22. Carvana's website appears high on the list of search results when a consumer types "used car sale in Hickory," which is advantageous for selling the part over Plaintiff's website that appears lower in the search results. These advertisements referencing off-site, fictitious, and unlicensed locations violate § 20-292 of the North Carolina Motor Vehicle Dealers and Manufacturing Licensing Law. On August 2, 2021, the State of North Carolina suspended Carvana's Raleigh area dealers license for—among other infractions of dealer licensing laws—not delivering vehicle titles to the Department of Motor Vehicles on time and for improperly issuing out-of-state temporary tags and plates to buyers who had no connection to the states from which the temporary tags and

plates were issued. Also, investigations found that Carvana sold vehicles in Raleigh that were not given state inspections. For similar reasons and around the same time in 2021, the Department placed on probation Carvana's license for the Charlotte location.

23. Carvana has had at various times, three locations in North Carolina, specifically in Raleigh, Charlotte, and Greensboro. Each location has its own used car dealer license with the NC DMV. These locations consist of a building that operates as a giant car-vending machine. Carvana delivers the purchased cars through this vending machine building and direct delivery to buyers throughout North Carolina.

24. Carvana's vending machine buildings do not comply with the dealer licensing laws requirements of North Carolina. There is no established salesroom to conspicuously display a license with the required information, such as a list of licensed salespeople. There is no place where the books, records, and files are kept [§ 20-286(6) and 20 -297], no place at which permanent business of bartering, trading, and selling motor vehicles take place whereby the public can contact the dealer at reasonable times [§ 20-290], and no place for inspection of point-of-sale records for used vehicle sales [§ 20-294]. Indeed, there is no way a DMV inspector can walk in to conduct any oversight to verify compliance.

25. Even though in 2021, § 20-292 of the Motor Vehicle Dealers and Manufacturing Licensing Law was amended to permit delivery of a purchased vehicle at another location other than the dealer's licensed establishment, such as the buyer's home or workplace, Carvana was already delivering used motor vehicles to buyers at their homes and other locations way before the law was amended in open infringement of the law. And, in their open disobedience of relevant laws and regulations, Carvana seized a market-share advantage over legitimate dealers who abided by and paid the costs related to following the same rules Carvana openly ignored.

26. Despite recent changes to the law permitting the off-site delivery of purchased vehicles, Carvana is still acting illegally since it continues to advertise off-site sales through off-site, unlicensed, and fictitious locations. See N.C.G.S. § 20-292.

27. Moreover, the 2021 § 20-292 amendment requires all forms and documents to have been fully agreed to and fully completed in advance of their presentation to the customer and no additional negotiations or modifications related to the content of said forms and documents, other than the correction of clerical or typographical errors, can take place. Complaints have been made in North Carolina, where consumers have alleged that Carvana does not comply with this requirement by amending and further negotiating the agreement's essential terms after the purchased vehicle is delivered to the buyer.

28. Consumers cannot see the "Buyers Guide" on a vehicle before purchasing it, as required by the FTC. See 16 C.F.R. Part 455.2 (a). Carvana sells its vehicles without a prominently displayed "Buyer's Guide," which is required by federal and North Carolina law to be placed on the vehicle at the time of sale. See North Carolina Administrative Code, Title 19a., NCAC 3D.0236.

29. This conduct also violates mandates by the Federal Trade Commission ("FTC") regulations at 16 C.F.R. Part 455. Without the required Buyer's Guide documentation, a reasonable consumer would not know whether the vehicle being sold is a "new" or a "used" vehicle and would not be advised of any material attributes about the vehicle. As licensed used motor vehicle dealers, plaintiffs must comply with such legal and regulatory requirements or face fines and loss of their dealership license.

30. Given that Carvana markets a non-contractual seven-day return policy that is implemented on an ad hoc basis, Carvana consumers can only test drive a vehicle after purchasing it. Because

Carvana requires purchasers to arbitrate disputes rather than allow for open litigation in Court, there is no way to determine whether Carvana does anything to honor the 7-day "grace period" promise that it markets to consumers. This is also to the detriment of consumer rights or interests.

31. Carvana engages in false and deceptive marketing practices by advertising through different platforms used vehicles for sale from fictitious and unlicensed locations and by selling used vehicles without holding their titles or disclosing this critical information to the purchaser.

32. Upon information and belief, Carvana also violated the Department's or FTC regulations by marketing and selling with list prices that did not disclose the exclusion of fees, taxes, title and licensing charges, delivering vehicles without a prominent displayed Buyer's guide, falsely advertising no hidden costs, and unlawfully employing unlicensed salespersons.

33. Carvana operates as a "motor vehicle dealer" and/or as a "used motor vehicle dealer "as defined under § 20-286, subsection 11 (a) and 16, respectively of Art. 12 of the Motor Vehicle Dealers and Manufacturing Licensing Law. Carvana deals in and sells vehicles, as described therein, and the 13 exceptions listed in subsection 11(b) do not apply to Defendants. Therefore, Carvana is a "motor vehicle dealers" and/or "used motor vehicle dealers" within the meaning of § 20-286, subsection 11 and 16 of Art. 12 of the Motor Vehicle Dealers and Manufacturing Licensing Law.

34. Subsection 16 of § 20-286 of Art. 12 of the Motor Vehicle Dealers and Manufacturing Licensing Law defines a used motor vehicle dealer as

*"A motor vehicle dealer who buys, sells or exchanges, or offers or attempts to negotiate a sale or exchange of an interest in, or who is engaged, wholly or in part, in the business of selling, used motor vehicles only."*

35. Carvana has operated and continues to operate in North Carolina, willfully or recklessly ignoring or otherwise bypassing applicable regulations followed by Plaintiff class(s). The alleged activities herein constitute a pattern of unfair and deceptive practices under North Carolina law and breaches(s) of the Lanham Act.

36. Carvana sold and continues to sell used motor vehicles in North Carolina despite the suspension of their license(s) to do so by the DMV. Sales occur at the time and place at which the seller physically delivers the goods. N.C.G.S.A. § 25-2-401. Therefore, when Carvana delivers used vehicles to customers in North Carolina, these sales are considered North Carolina sales, subjecting Carvana to the North Carolina laws and regulations discussed herein.

37. In addition to the excessive delays in vehicle title transfers, issues with insufficient or faulty inspections have been widely reported by consumers. Carvana claims through its website to test drive the vehicle, perform detailed inspections, verify that each vehicle is repaired to meet strict standards, and inform buyers of any significant imperfections on the vehicle. However, consumer reviews document instances where buyers question whether their vehicles passed Carvana's so-called thorough inspections and promised standards.

38. Although North Carolina officials have placed on probation and/or suspended Carvana's licenses to operate in two North Carolina locations, Carvana's ability to sell cars in the state has not been substantially impacted since Carvana continues to sell used cars online.

39. Outside of violating state and federal laws, the consumer complaints in the Department against Carvana show that the company has failed to meet its own guarantees to consumers. Carvana claims that the vehicles it sells have gone through an inspection process, even though the cars sold in Raleigh demonstrate that this is not always the case.[2]

---

[2] S. Aburahma; Carvana is Banned From Selling Cars In North Carolina Until 2022; getjerry.com; (June 27, 2022); https://getjerry.com/insights/carvana-banned-selling-cars-north-carolina-2022.

40. Carvana has a customary practice of entering written retail installment contracts (RISC) with the consumer. Carvana promises to manage the permanent registration of the purchased vehicle in the state. Carvana consumers chose Carvana over other competitors, including Plaintiff and Class Members, because they trusted Carvana would carry out its promises, such as complying with the vehicle registration procedures of the state per the provisions of their contract. Consumers are persuaded to purchase their units under this type of promise, but later, Carvana breaches its contractual duties. This is another unfair and deceptive trade practice that, in addition to affecting the consumer, has caused used car dealers, such as Plaintiff and Class Members, to lose their customers and therefore see their sales drop.

41. Carvana's business is about maintaining an extensive used-car catalog on its website with which other used motor vehicle dealers, such as Plaintiff and Class Members, cannot compete. They do this and make targeted advertising to customers with false and misleading information, leveraging "new tech" to wiggle around the *corpus juris* regarding used car dealerships.

42. On information and belief, Carvana buys vehicles regardless of whether they have an up-to-date title, have or not eviction problems, have been stolen vehicles, or are vehicles from jurisdictions in which Carvana knows it will never obtain titles.

43. As a direct result of Plaintiffs' inability to lawfully compete with Defendants' wrongful acts, which provide Defendants' unlawful savings on the typical administrative costs required to abide by relevant laws, Plaintiffs have suffered and continue to suffer damages, including loss of profits and loss of market share. Indeed, Plaintiff anticipates the potential inclusion of class members for whom Carvana's illicit activities were the proximate cause of going out of business or declaring bankruptcy.

44. Carvana has and continues to use "virtual addresses" to appear to have a presence in more markets than it truly has a legitimate presence in. Carvana falsely advertises it has the exact model the client wants available at close proximity. In truth, the vehicle is regularly located in another county, city, or even out of state and/or without the proper papers necessary to reasonably transfer the title to a new owner. Based on these misrepresentations by Carvana, consumers were led to make purchasing decisions with Carvana and away from Plaintiff's business, thereby causing Plaintiff and Class Members harm.

45. Additionally, Carvana lists cars online as physically located on dealership lots that it does not own. Carvana calls this "Marketplace" inventory. Carvana does not reasonably disclose to the potential buyer who actually owns the car before a potential sale. This undisclosed "marketplace" inventory is a deceptive practice that misleads customers and consequently affects Plaintiff and Class Members since these deceptions attract customers to Defendant's business and—necessarily—away from Plaintiff's and Class members' businesses, unfairly usurping business potential and causing them to lose revenue, by engaging in illicit advertising practices and avoiding the standard costs necessary to abide by relevant regulations.

46. Upon information and belief, Carvana's policies and practices are to routinely issue multiple temporary license tags, in violation of state laws governing the issuance of temporary license tags. Class discovery is expected to reveal that Carvana's records indicate a routine repeated generation of temporary license tag reissuances by Carvana's computer system in connection with sales transactions in the State of North Carolina and throughout the United States.

This belief is well-grounded and based on the administrative action taken against Carvana recently by the State of North Carolina.[3]

47. Although the DMV suspended the license from Carvana's Raleigh location and put Charlotte's on probation, Carvana continues to sell used cars directly to customers through its website by advertising vehicles through off-site, unlicensed, or fictitious locations.

48. In 2018, Carvana opened two locations about an hour from Plaintiff—Carvana Winston Salem in January and Carvana Charlotte in May. Since then, Plaintiff's used car sales gradually started to drop. From 494 units sold in 2017, Car Guys sales drastically dropped by approximately 23% to 380 units in 2018. In 2019 the sales of units sold dropped again by roughly 27%.

49. Regardless of the Department's administrative actions taken against Carvana, Carvana has continued operating with gross disregard for public policy and laws applicable to used car dealers. As mentioned above, Carvana engages in illegal and deceptive conduct by selling cars without the due state inspections, causing excessive delays of vehicle title transfers, selling used vehicles without having an established dealership location, and reissuing out-of-state temporary tags, among other illegal and deceptive acts.

50. Other dealerships authorized and licensed to sell used vehicles in North Carolina have suffered identical competitive injuries, although the amounts of losses and restitution may vary between class members. Carvana continues to have a presence in North Carolina doing business as a used motor vehicle dealer, through its unfair business practices and misleading and deceptive advertising. As they continue doing business this way, they unfairly are gaining market share and causing damages and losses to Plaintiff and class members as competitors in the used car industry

---

[3] Michael Praats; After 10 Months, man still hasn't received his car's registration after buying from Carvana; WECT NEWS 6; (Oct. 13, 2021 at 5:47 PM); https://www.wect.com/2021/10/13/after-10-months-man-still-hasnt-received-his-cars-registration-after-buying-carvana/.

51. Carvana has impacted the automotive industry by committing market share robbery from many used car retailers nationwide. In its Full Year 2019 performance news release and letter to Shareholders, Carvana reported: Retail Units Sold of 177,549 vehicles, an 89% increase YoY; Increase in vehicles purchased from customers by 231% YoY; Earnings of $3.94 billion in revenue, a 101% increase YoY; Fastest organic growth of any automotive retailer in U.S. history (+83,441retail units).

52. Additionally, said article states that: If Carvana continues to perform as they have, they will surpass all other used car retailers like Off-Lease and Texas Direct and start cutting into the traditional retailers' used car market share and most importantly-profitability. In North Carolina, Cross-Sell data reveals that this has already happened in the Raleigh market to Capitol Ford and Hendrick Toyota. These franchised dealers lost 306 and 141 used vehicles in 2018, respectively. In March 2019, Carvana passed Capitol Ford in used car vehicle sales for the first time. And by the end of 2019, they crept into the top three of North Carolina's highest-selling automotive retailers.

53. In 2019, Carvana Raleigh secured the #3 spot of Top Selling Retailers in North Carolina, while Carvana Charlotte crept up to the # 9 spot during the second half of 2019.[4]

54. The previously asserted improper and unlawful practices were not only widespread across North Carolina. The following findings prove this is a behavior pattern that Defendant follows nationwide.

55. On November 15, 2022, the State of Pennsylvania suspended two Carvana locations in Philadelphia and Bridgeville area dealer licenses until December 28, 2022.[5] In May 2022, the State

---

[4] By Admin; "Carvana Market Takeover: Raleigh, NC"; Cross Sell; (February 27, 2020); https://blog.cross-sell.com/blog/carvana-market-takeover-raleigh-nc.
[5] Jacob Olivia; Carvana Faces Title And Registration Issues Again, This Time In PA; Motor1.com; (Nov 15, 2022 at 8:06pm ET); https://www.motor1.com/news/621947/carvana-title-registration-issues-pennsylvania/.

of Illinois suspended Carvana's area dealer license for conducting business in a way that violates Illinois laws, according to the Secretary of State's office Carvana was improperly supplying customers in the state with out-of-state temporary plates and its failure to transfer title to cars sold there in a timely manner.[6] In Michigan, Carvana was placed on 18-month probation for violating vehicle registration law.[7] Carvana paid $850,000 to four counties in California in a civil lawsuit when Carvana sold and transported cars without the proper licenses.[8] Since 2019, the Texas Department of Motor Vehicles has cited Carvana with more than 30 violations along with issuing more than $10,000 in fines for violating state registration laws.[9] Even Carvana's home state of Arizona has received more than 80 complaints about the company over a four-year period.

56. In 2021, the Better Business Bureau received more than 900 consumer complaints against Carvana about issues that include incorrect paperwork and delays in getting titles and registrations.[10]

57. On June 24, 2022, Barron's published an article entitled "Carvana Sought to Disrupt Auto Sales. It Delivered Undriveable Cars [,]" which detailed several issues with Carvana. The Barron's article stated several issues regarding Carvana's operations, including, selling cars faster than it could get them registered to their new owners, selling cars without being able to transfer title to

---

[6] Jacob Adelman; Illinois Suspends Carvana's Dealer's License Over Late Registration and 'Improper' Tags; (May 13, 2022 4:54 pm ET); https://www.barrons.com/articles/illinois-suspends-carvana-dealers-license-51652475179.

[7] Angela Benander; Department of State suspends Novi dealership; Michigan.gov; (October 07, 2022); https://www.michigan.gov/sos/resources/news/2022/10/07/department-of-state-suspends-novi-dealership.

[8] P.J. Johnson; Online Vehicle Retailer Settles Consumer Protection Lawsuit.; Los Angeles County District, Attorney's Office; (August 3, 2021); https://da.lacounty.gov/media/news/online-vehicle-retailer-settles-consumer-protection-lawsuit.

[9] By Admin; Online Car Seller Carvana Hit With Dozens of State Violations As Customers Report Paperwork Troubles. CBS Broadcasting Inc.; (November 15, 2021, 9:55 PM); https://www.cbsnews.com/dfw/news/online-car-seller-carvana-hit-texas-state-violations-customers-paperwork-troubles/.

[10] Tony Owusu; Carvana Drops, Complaint Against Car Retailer Reportedly at Issue.; TheStreet, Inc.; (Oct. 22, 2021); https://www.thestreet.com/investing/carvana-stock-lower-complaints-from-consumers-reportedly-rise.

the vehicles within the timeframe set forth by the respective states, significant odometer discrepancies, and emissions at the time of sales, among other issues, that have caused numerous complaints by consumers. As a result of said issues, Carvana, at one point, formed an ad hoc unit known as the "undriveable-car task force." [11]

58. While used car sales are competitive and usually with small profit margins after factoring in costs of compliance with licensing and dealership laws and regulations, the loss of over 100-unit sales in one year was a significant hit to Plaintiff's bottom line, market share, and continued capacity to do business legitimately in the state.

59. Plaintiff is informed and believes that Carvana's market entry in North Carolina through the pattern of unfair and deceptive trade practices acts described herein is the cause in fact, and a proximate and substantial factor in sales losses in 2018 and continuing to the present. Plaintiff will retain appropriate accounting consultants to determine actual competitive injury and harm.

60. In or around 2021, Plaintiff became aware of the license suspension of the Carvana Raleigh location and the probation status of a Charlotte location due to violations of dealer licensing laws.

61. Defendants' conduct is not only causing direct and measurable harm to Plaintiff but is also causing similar harm and losses to the entire industry of legitimate used motor vehicle dealers duly licensed and authorized to do business in North Carolina.

62. The herein-described unfair and deceptive practices have given Carvana an unfair market advantage over Plaintiffs and all Members of the Class(s), by directly causing them losses in their profits and market share while at the same time negatively affecting the public's image of used car

---

[11] J. Adelman; Carvana Sought to Disrupt Auto Sales. It Delivered Undriveable Cars.; Barron's; (June 24, 2022 7:41 pm ET); https://www.barrons.com/articles/carvana-used-cars-registration-problems-51656111441.

dealers at large and the state of consumer rights more generally by openly ignoring the civil regulatory schemes for used car dealers.

63. Carvana is engaging in unlawful competition with legitimate licensed and compliant auto dealerships by engaging in a pattern of unfair and deceptive practices which flagrantly violate motor vehicle dealer licensing laws; misled consumers by advertising sales from fictitious and unlicensed locations and advertising sales of vehicles owned by third parties, all without disclosing this critical information to potential buyers. By engaging in this pattern of unfair and deceptive trade practices, Carvana has gained an unlawful advantage in the market share of used car sales in North Carolina and across the nation, adversely affecting competitors including Plaintiff and Class Members.

64. Plaintiff's losses continue as Carvana's illegal and anti-competitive activities proliferate, in an amount to be proven at trial. Plaintiff intends to utilize discovery to obtain Carvana sales records to establish the results of Carvana's illegal and fraudulent enterprise and to calculate the ill-gotten gains over lawfully and legitimate competitors in the proposed Plaintiff Class. The total amount, for both proposed classes in this complaint, is expected to exceed $5,000,000.00.

65. As a direct, legal, and proximate cause of Carvana's previously mentioned illegal, false, unfair, and deceptive business practices, while operating as used car dealership in North Carolina, Plaintiff and class members have suffered a direct, finite financial, and competitive injury and harm through lost sales and inability to compete with the Carvana's illicitly obtained market advantages.

## CLASS ACTION ALLEGATIONS

66. Preceding paragraphs are realleged and reincorporated by reference herein.

67. Plaintiffs seek to pursue claims for declaratory, injunctive, and monetary relief in accordance with Rule 23 of the Federal Rules of Civil Procedure as representatives of two overlapping classes defined as follow: The first class, referred to here as the "State Class," represented by Plaintiff in this action, and of which Plaintiff is himself a member, consists of all North Carolina individuals or entities (irrespective of business form) duly licensed by the North Carolina Department of Motor Vehicles to operate as dealerships for the marketing and sales of used motor vehicles at any time from four years prior to the commencement of this action, or such other time as deemed proper by the Court. The second class, referred to here as the "National Class" or "Lanham Class," represented by Plaintiff in this action, and of which Plaintiff is himself a member, consists of all individuals or entities (irrespective of business form) in the 50-states duly licensed by their respective State's law to operate as dealerships for the marketing and sales of used motor vehicles at any time from four years prior to the commencement of this action, or such other time as deemed proper by the Court.

68. Membership for these classes is so numerous that the individual joinder of members is impractical. Although the exact number and identities of class members are unknown at this time and can only be ascertained through appropriate discovery, Plaintiff estimates and believes the number of individuals and business entities in the proposed class exceeds 1,000 members for the State Class. The quantity and identity of such membership is ascertainable via inspection of the North Carolina DMV licensee records. Plaintiff is currently still determining the approximate size of the proposed National Class.

69. The claims of the named Plaintiff and other class members are typical of the claims for all the class members, as all members sustained the same type of injury. Defendants' practices, as described in the factual allegations above, affected the members of the class in similar ways by

unethically reducing the market share of legitimate dealers by simply ignoring compliance with applicable regulations and/or engaging in false advertising practices.

70. Named Plaintiff will fairly and adequately protect the interest of the class members, all of whom are victims of the Defendants' unfair and deceptive practices, and further has no interest antagonistic to those of the class members.

71. Plaintiff has retained a national Plaintiff class action law firm, experienced in prosecuting complex civil litigation, and competent for the purposes of litigating this matter. [12]

72. There are various shared questions of law and fact arising out of Defendants' conduct to the two classes, making this an appropriate case for resolution utilizing a class action. The common issues include, but are not limited to, the following:

a. Whether Defendants engaged in a uniform practice of violating dealer licensing laws across North Carolina by:

i. Not delivering the vehicle title to the DMV on time;

ii. For improperly issuing and reissuing out-of-state temporary tags and plates to buyers who had no connection to the states from which the temporary tags and plates were issued;

iii. For routinely reissuing multiple temporary license tags in violation of state laws;

iv. For selling vehicles without state inspections;

v. Failure to comply with established salesroom requirements;

b. For deceptively advertising used vehicles for sale from off-site, unlicensed, and fictitious locations and therefore unfairly attracting business away from Plaintiff's and class members' businesses, thereby causing them harm;

---

[12] Our Difference; Napoli Shkolnik PLLC; https://www.napolilaw.com/our-difference/; (last visited Nov. 18, 2022)

c. For deceptively advertising used vehicles for sale owned by third parties without disclosing this critical factor to the potential purchaser. and therefore, unfairly attracting business away from Plaintiff's and class members business, thereby causing them harm;

d. Whether used car dealers have a right of class relief based upon a single market-competitor's widespread violations of used motor vehicle dealers licensing laws;

e. Whether Defendants engaged in a uniform deceitful practice of listing cars from third parties and selling them as their own through unlicensed locations without disclosing these facts to the potential buyers and whether Plaintiffs have a right of class relief based upon this mentioned practice;

f. Whether the Defendants' sales practices were unfair and deceptive, negligent, fraudulent, or in violation of other requirements of the law, and if so—whether those illicit practices resulted in an unlawful seizure of market share by the Defendant;

g. Whether the Defendants' practices concerning the advertising and sales of used motor vehicles were unfair and deceptive, negligent, fraudulent, or in violation of other requirements of the law;

h. Whether Carvana improperly held itself acted as a motor vehicle dealer and/or used motor vehicle dealer in accordance with the definition of North Carolina Department of Motor Vehicles laws or other applicable state's laws and regulations and otherwise through its consumer marketing violated the law's referenced in Plaintiffs complaint;

i. Whether class members suffered actual damages;

j. Whether Defendants' improper practices occurred across the various dealerships and/or unlicensed locations;

k. Whether class members have a right to actual, statutory, treble, and punitive damages, injunctive or equitable relief;

l.   Whether all Defendants are jointly and severally liable for Carvana's unfair and deceptive practice and whether class members are entitled to attorneys' fees;

73. A class action is superior to other available methods for the fair and efficient adjudication of this controversy given that:

a.   Common questions of law and fact predominate over individual questions that may arise, such that there would be efficiencies in litigating the common issues class-wide instead of on a repetitive, individual basis;

b.   The size of any given class member's damage claim may be too small to make individual litigation an economically viable alternative, such that few class members have the means or interest in controlling the prosecution of separate actions;

c.   A class action is required for optimal deterrence, optimal compensation and to limit the court-awarded reasonable legal expenses incurred by Class Members;

d.   Should individual class members be required to bring separate actions, Courts would be confronted by a multiplicity of numerous duplicative lawsuits, thus burdening the fair and just administration of justice. This creates an unreasonable and unnecessary risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results would magnify the delay and expense to all parties and the Court system, this class action will present fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court; and

e.   The conduct of Defendants with respect to the class members has been uniform. Defendants treated each of the Class Members in a comparable manner.

74. Each Class Member will be identified through discovery and will be notified and given an opportunity to opt-out of the class in the event he or she has no interest in being represented by

this action or prefers to be excluded from the class. The judgment will not be binding on those members who opt-out of the class. Consequently, any potential class members who have an interest in prosecuting separate claims and controlling their own litigation against Defendants will not be prejudiced by these actions.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### UNFAIR AND DECEPTIVE TRADE PRACTICES
### (N.C. GEN. STAT. § 75-1.1)

75. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

76. The North Carolina Unfair and Deceptive Trade Practices Act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). Defendants' unfair and deceptive practices alleged herein constitute unfair and deceptive acts or practices in or affecting commerce pursuant to N.C. Gen. Stat. § 75-1.1. Defendants' practices are illegal, unfair, or deceptive acts or practices in the conduct of trade or commerce and are inherently deceptive.

77. Plaintiffs are injured "persons" pursuant to § 75-16 because their businesses have been injured because of Defendants' unfair competition.

78. Defendants' recurrent violations of dealer licensing laws alleged herein violate industry standards, offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

79. The sale of used motor vehicles is a consumer transaction within the meaning of trade or commerce.

80. The recurrent violations of described North Carolina dealer licensing laws and the failure to disclose information in connection with the consumer transaction, such as not disclosing to a buyer important information as to the title of the purchased used motor vehicle, is an unfair trade practice as it directly affects consumers.

81. Carvana Defendants engaged in unfair competition with Plaintiff and class members by purposefully avoiding the legal requirements mandated by law to engage in used motor vehicle sales in North Carolina. Carvana Defendants' sales and profits thrived as a direct result of violating dealer licensing laws and consumer laws, while Plaintiffs' sales decreased as a direct result of Carvana Defendants' unfair competition. Carvana Defendants' pattern of violations under N.C Gen Stat. § 20-294 constitute violations of Chapter 75. These violations were knowing and willful and amounted to an unfair and deceptive trade practice under North Carolina law. Defendants' used car sales practices proximately caused harm to Plaintiff and to the class. Plaintiffs and Class Members have been damaged individually or cumulatively in an amount to be proven at trial. The damages should be trebled, and Plaintiffs and Class Members should be allowed to recover attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.

82. Plaintiffs are also entitled to seek, and do seek, injunctive relief. Plaintiffs are informed and believe, and thereon allege, that Defendants' unlawful, unfair, and fraudulent business practices described above present a continuing threat to members of the class and to members of the public in that Defendants continue to engage in these practices. Such practices will cause great and irreparable injury to the public and to Plaintiffs as competitors, who must rigorously comply with North Carolina laws and regulations promulgated by the DMV, to maintain their dealer licenses.

83. Injunctive relief is proper because Plaintiff, the Class Members, and the public have no adequate remedy at law. Damages alone cannot compel the Defendants to cease to engage in the unfair business practices described in this action. Plaintiffs allege that the benefit to the public good, as well as to Class Members, far outweighs the inconvenience to the Defendants of ceasing to engage in violations of North Carolina's unfair and deceptive practices act pursuant to N.C.G.S. §75-1.1.

SECOND CAUSE OF ACTION

NORTH CAROLINA COMMON LAW UNFAIR AND DECEPTIVE TRADE PRACTICES

84. The preceding paragraphs are realleged and incorporated herein by reference.

85. Carvana Defendant's actions as described above were taken in the context of competition between business competitors.

86. Defendant Carvana engaged in unfair competition and misappropriated a commercial advantage that was rightfully earned by Plaintiff through investment, labor, and organization. Carvana falsely advertised through different marketing platforms and through its own website portal, carvana.com. Carvana falsely advertises to the consuming public to have available units for sale within Hickory, where they do not have a licensed dealership. Carvana does so without reasonably disclosing that the vehicle may be in another location, county, city, or even in another state. By this wrongdoing, Carvana misappropriated Plaintiff commercial advantage as a Bona Fide Used Car Dealer in Caldwell County, and that of the respective class members in North Carolina.

87. Defendant's actions as described above were intentional, malicious, and willful and wanton.

88. The foregoing conduct of Defendants constitutes unfair and deceptive methods of competition.

89. Defendants are liable, jointly, and severally, for the damages Plaintiffs have suffered as a result of Defendants' unfair competition.

90. As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered injury, including without limitation lost sales and revenues, damage to Plaintiff's goodwill, and corresponding diminution in value of Plaintiff's business.

91. Plaintiffs have suffered and continue to suffer harm because of Defendants' unfair competition in an amount to be determined by a jury.

92. As a result of Defendant's unfair competition, Plaintiff is entitled to an award of its damages, punitive damages, costs, interest, and attorneys' fees.

93. Defendants' unlawful and wrongful activities described in this Complaint are unfair methods of competition, unfair and deceptive acts or practices, and unconscionable business conduct, all in violation of North Carolina common law.

THIRD CAUSE OF ACTION
FALSE ADVERTISING (LANHAM ACT)
15 U.S.C § 1125(a)(1)(B)

94. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

95. Defendant's false and/or misleading representations of fact in Defendant's commercial advertising misrepresent the nature, characteristics, and qualities of Defendant's commercial activities to Plaintiff's detriment, constituting false advertising in violation of 15 U.S.C § 1125(a)(1)(B).

96.  Defendant operates a website located at www.carvana.com in which Defendant's products (used cars) and services matters are advertised.

97. Defendant promotional material contains false and/or misleading descriptions of fact.

98. Defendant supplied information to the consuming public which were published on Defendant's website www.carvana.com and in targeted marketing which are false, misleading, or inaccurate. This misleading information has a reasonable likelihood to deceive the general consuming public.

99. Defendant does not reasonably disclose to the potential buyer who are their partners on their "Marketplace" business model. Such statements made in advertising, promotions, and sales are materially false statements that are likely to confuse the public and damage Plaintiff in its ability to compete with Defendants.

100.    Defendants' statements, advertising, and promotions constitute false and/or misleading misrepresentations of fact as to the nature, characteristics, and qualities of its goods in violation of 15 U.S.C. § 1125(a). Moreover, these false or misleading statements are material and not common puffery. Defendants' statements, advertising, and promotions are material misrepresentations upon which customers and potential customers have relied upon or will rely upon.

101.    As a direct and proximate result of Defendants' herein referenced acts and omissions, Plaintiff has been damaged in an amount to be proven at trial.

102.    On information and belief, Defendants' acts have been deliberate, willful, wanton, and malicious an done with the intent to deceive the public. Plaintiff is therefore also entitled to an award of attorneys' fees and costs and treble damages. Plaintiff will continue to suffer irreparable harm unless and until Defendant is enjoined from such acts and Plaintiff further requests injunctive relief against Defendants from preventing Carvana's continued use of false advertising.

<u>FOURTH CAUSE OF ACTION</u>

103.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

104.     This claim is brought under the Motor Vehicle Dealers and Manufacturers Licensing Law, N.C. Gen. Stat. § 20-285 et seq. ("Dealer Act"). The Dealer Act reflects the North Carolina General Assembly's finding as expressed in N.C. Gen. Stat. § 20-285 of a need to "prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this State."

105.     Plaintiffs and Defendants are "motor vehicle dealers" as defined by N.C. Gen. Stat. and "used motor vehicle dealers" as defined by N.C. Gen. Stat. § 20-286(16).

106.     The motor vehicle purchases were "retail installment sales" as defined by N.C. Gen. Stat. § 20-286(15).

107.     Defendants are/were required to be licensed under N.C. Gen. Stat. § 20-287.

108.     Defendants' licenses to operate as used motor vehicle dealers in two locations in North Carolina have been suspended and/or placed on probation for violations under N.C Gen Stat. section 20-294 for selling used vehicles without proper titles, inspections, plates, and other issues as established above that also represent non-compliance with the Department's laws and regulations.

109.     Carvana Defendants' purpose and aim, through their operational scheme of selling used cars online by misleading and fraudulent advertising, is to disrupt the used car market by bypassing dealership rules and requirements in the State of North Carolina. By doing so, Defendants have unfairly gained a market share advantage over legitimate competitors, causing them losses and harm.

110.     Under N.C. Gen. Stat. § 20-308.1, and to the extent the evidence may show, Defendants engaged in violations of which were willful, malicious, or wanton, or which were continued multiple violations, and Plaintiffs and Class Members are entitled to recovery of punitive damages, reasonable attorneys' fees, and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff and Class Members from each of the two respective overlapping classes ask this Court to:

a.  Certify this case as a class action under Rule 23, designate the Plaintiff as class representative, and designate the undersigned counsel as class counsel;
b.  Award the Plaintiff and Class Members their actual, compensatory, economic, statutory, and any other damages to which they may be entitled, in an amount to be determined at trial, for the improper conduct of the Defendants;
c.  Award the Plaintiff and Class Members monetary, declarative, and injunctive relief as herein above requested;
d.   Award Plaintiff and Class Members the costs of suit, any discretionary costs as may be allowable by law, pre-judgment and post-judgment interest, attorney's fees, and any increased or treble damages or exemplary or punitive damages allowed by law;
e.  Enter an Order enjoining Defendants from engaging in further wrongful practices alleged herein or uncovered in discovery; and
f.   Award such other and further relief as the Court deems just and proper.

Respectfully submitted by Plaintiff's undersigned counsel.

Date: November 18, 2022

*/s/ Nevin Wisnoski*
Nevin Wisnoski
NAPOLI SHKOLNIK, PLLC
NC Bar No.: 55038
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
Fax: (888) 870-2757
Email: nwisnoski@napolilaw.com

Salvatore C. Badala
(To submit *pro hac vice*)
NAPOLI SHKOLNIK, PLLC

400 Broadhollow Road
Melville, NY 11747
(212) 397-1000
(646) 843-7603
Email: sbadala@napolilaw.com

Rebeca Martinez Sicari
(To submit *pro hac vice*)
Maria Nery
(To submit *pro hac vice*)
Jesus Fernandez
(To submit *pro hac vice*)
Arturo Gigante
(To submit *pro hac vice*)
NS PR LAW SERVICES, LLC
1302 Avenida Ponce de Leon
Santurce, PR 00907
T: (787) 493-5088