# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
#### CIVIL ACTION NO. 5:22-CV-00171-KDB-DCK

| | |
|---|---|
| **MOUNTAINEER MOTORS OF LENOIR, LLC,** | |
| **Plaintiff,** | |
| **v.** | <u>**ORDER**</u> |
| **CARVANA, LLC; CARVANA & COMPANY; CARVANA AND COMPANY OF NC LLC; CARVANA LOGISTICS LLC; ERNEST GARCIA III; CARVANA CARS, LLC; CARVANA CO., LLC; DOES 1 THROUGH 10; CARVANA FAC LLC; AND ERNEST GARCIA II,** | |
| **Defendants.** | |

**THIS MATTER** is before the Court on Defendant Carvana's Motion to Dismiss (Doc. No. 30) and Defendants Ernest Garcia II and Ernest Garcia III's (together, the "Garcias") Motion to Dismiss (Doc. No. 31).[1] In this case, Mountaineer Motors argues that Carvana's alleged unfair and deceptive trade practices, false advertising, and violations of North Carolina's vehicle dealer "Licensing Law" impaired Plaintiff's ability to remain competitive, leading to a loss in business. In their Motions to Dismiss, all of the Defendants argue that Plaintiff has not plausibly alleged

---

[1] For the purposes of this order, "Carvana" includes Defendants Carvana Group, LLC, Carvana, LLC, Carvana Cars, LLC, Carvana FAC, LLC, Carvana Logistics, LLC, and Carvana Co., LLC. The Garcias, when discussed individually, will be referred to as Garcia Senior and Garcia Junior.

any unlawful conduct and further argue that all of the claims are barred on other grounds. The Court has carefully considered these motions, the associated briefs, and other filings of record. For the reasons discussed below, the Court will **GRANT** Defendants' Motions to Dismiss.

## I.      LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to expose deficient allegations "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A claim will not survive a motion to dismiss if it contains nothing more than "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). That said, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal citation and quotation marks omitted).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.,*

*Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). The Court, for the purposes of a Rule 12(b)(6) motion, takes all factual allegations as true. *See Ashcroft*, 556 U.S. at 678. However, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Mountaineer Motors, which also does business as Car Guys Mountaineer Motors, is a car dealership in Lenoir, North Carolina. Doc. No. 25 at ¶ 40.[2] Carvana sells used automobiles. In 2017, it opened its first car "vending machine" in North Carolina. ¶ 103. It opened a second vending machine location the following year. *Id.* By the end of 2019, Carvana was among North Carolina's top selling car retailers. ¶ 107. As Carvana's market share grew, Mountaineer Motors saw its sales decrease. ¶ 117. Plaintiff alleges that although it sold 494 vehicles in 2017, it sold only 380 vehicles in 2018, before further losing sales in 2019. ¶ 103.

Carvana, for its part, faced regulatory hurdles despite its rapid growth. In 2021, the North Carolina Division of Motor Vehicles ("DMV") suspended the Raleigh location's dealers' license for violations of the North Carolina Motor Vehicle Dealers and Manufacturers Licensing Law ("Licensing Law"). ¶ 36. The DMV found that Carvana had failed to timely deliver title paperwork to the DMV, that Carvana had engaged in unfair or deceptive acts constituting an unfair method of competition because it issued out-of-state temporary tags/plates for vehicles sold to North Carolina residents, and that it had offered vehicles for sale without the required

---

[2] Unless otherwise noted, all paragraph markers refer to the Amended Complaint (the "Complaint") (Doc. No. 25).

state inspection. ₱ 37. The Charlotte location was placed on probation for similar infractions. ₱ 36.

In 2022, Plaintiff filed its original Complaint, alleging that Carvana had engaged in unfair and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), had engaged in false advertising in violation of the federal Lanham Act, and had violated provisions of the Licensing Law. (Doc. No. 1). Carvana filed a Motion to Dismiss in response to Plaintiff's Complaint, (Doc. No. 20), which was denied as moot after Mountaineer Motors filed its Amended Complaint (Doc. Nos. 23, 25). Defendants Carvana and the Garcias then filed the pending Motions to Dismiss the Amended Complaint for Failure to State a Claim pursuant to Rule 12(b)(6). (Doc. Nos. 30, 31).

### III.    DISCUSSION

#### A.    The Garcias' Motion to Dismiss

In their Motion to Dismiss, the Garcias, who are residents of Texas and Arizona, argue that: (1) the Court lacks personal jurisdiction over them, and (2) the Complaint fails to state a claim against them. (*See* Doc. No. 31-1, at 4, 10). In response, Mountaineer Motors contends that although it does not allege that either Garcia personally carried out any alleged wrongful conduct the Court should exercise personal jurisdiction over the Garcias and allow its claims to proceed. Specifically, it argues that the Court should "pierce the corporate veil" and hold the Garcias individually responsible for all of Carvana's conduct. (*See* Doc. No. 40, 5-9). For the reasons discussed below, the Court finds that there are insufficient allegations to ignore Carvana's corporate form and hold its officers liable without regard to their personal involvement. Further, the Court agrees with the Garcias that the Plaintiff's "shotgun Complaint" fails to state a claim against them. Therefore, the Court will grant the Garcias' motion.

4

### 1. Personal Jurisdiction

It is well established that there are two ways – general and specific jurisdiction – for a federal court to exercise personal jurisdiction over a defendant. *See, e.g., Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014). Neither applies here. "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San Francisco County*, 582 U.S. 255, 262 (2017) (emphasis in original) (citing *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564 U.S. 915, 919 (2011)). For individuals, such as the Garcias, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924. Garcia Senior and Garcia Junior have provided sworn affidavits that they are residents of Texas and Arizona, respectively, (*See* Doc. No. 31-1, at 22-23, 25-26), and Mountaineer Motors asserts no argument or evidence to the contrary. Accordingly, the Court finds that Plaintiff has not plausibly alleged that this Court has general personal jurisdiction over the Garcias.

As for specific personal jurisdiction, Plaintiff's lack of particular factual allegations against the Garcias in the Complaint leads to the same result. The Court can only exercise specific personal jurisdiction over a nonresident defendant if doing so comports with the North Carolina long-arm statute and the Fourteenth Amendment Due Process Clause. *See, e.g., Mitrano v. Hawes,* 377 F.3d 402, 406 (4th Cir. 2004). In North Carolina, where the long-arm statute extends personal jurisdiction to the limits of the Fourteenth Amendment's Due Process Clause, "the statutory inquiry merges with the constitutional inquiry." *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Specific jurisdiction depends on "an affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 918 (citations

omitted). In short, Plaintiff must plausibly allege that (1) the Garcias have had "continuous and systematic" contacts with North Carolina, (2) Mountaineer Motors' claim arises out of those contacts, and (3) exercising personal jurisdiction would be fair. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). In their respective affidavits, the Garcias testify they were not personally involved with Carvana's alleged unlawful advertisements and further state they have not engaged in any substantial activity in the state of North Carolina. (*See* Doc. No. 31-1, at 22-23, 25-26). Again, Mountaineer Motors asserts no argument or evidence to the contrary in its Complaint or response to the Garcias' Motion to Dismiss. Therefore, the Court finds that the facts as alleged do not plausibly establish that this Court has specific jurisdiction over the Garcias.

Lastly, Mountaineer Motors argues that personal jurisdiction exists because Carvana, a group of related corporate entities, are collectively merely an "instrumentality" of the individual Garcias. Courts rarely "pierce the corporate veil" in either North Carolina or Delaware, and with good reason because to do otherwise would eviscerate the long acknowledged economic benefits of limited individual liability for corporate shareholders, officers and directors.[3] *See Green v.*

---

[3] The Garcias argue that federal courts in North Carolina generally apply the law of the state of incorporation when analyzing a claim to pierce the corporate veil. (*See* Doc. No. 31-1, at 13) (citing *Dewitt v. Hutchins*, 309 F. Supp. 2d 743, 751 (M.D.N.C. 2004)); *Richmond v. Indalex Inc.*, 308 F. Supp. 2d 648, 658 (M.D.N.C. 2004). Here, that would mean applying Delaware law. For its part, Plaintiff notes that the overall standard for piercing the corporate veil is consistent in North Carolina and Delaware, but otherwise refers only to North Carolina law. (Doc. No. 40, at 9-12).

The North Carolina Supreme Court has not definitively answered the question of which law applies to a claim for piercing the corporate veil. *See Loray Master Tenant, LLC v. Foss N.C. Mill Credit 2014 Fund I, LLC*, No. 19 CVS 1024, 2021 WL 661910, at *9 (N.C. Super. Feb. 18, 2021). Although some state courts have applied North Carolina law in piercing corporate veil, rather than the law of the state of incorporation, this Court need not wade into this issue because Plaintiff has not satisfied the elements to pierce the corporate veil under either North Carolina or Delaware law. *See Bruce-Terminix Co v. The Terminix Int'l Co. P'ship*, No. 1:20-CV-962, 2023

*Freeman*, 749 S.E.2d 262, 270 (N.C. 2013) ("Disregarding the corporate form is not to be done lightly."); *see also Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) ("Delaware public policy disfavors disregarding the separate legal existence of business entities.") (cleaned up); *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *14 (Del. Ch. Sept. 5, 2023) (citing *All. Data Sys. Corp.*, 963 A.2d 746, 769 (Del. Ch. 2009)) ("Delaware law respects corporate formalities, absent a basis for veil-piercing, recognizing that the wealth-generating potential of corporate and other limited liability entities would be stymied if it did otherwise."). Thus, to survive a motion to dismiss, Plaintiff must plausibly allege that Carvana is operated as "a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for [their] activities in violation of declared public policy or statute of the State." *Green v. Freeman*, 749 S.E.2d 262, 270 (N.C. 2013) (emphasis in original) (citing *Henderson v. Sec. Mortg. & Fin. Co.*, 160 S.E.2d 39, 44 (N.C. 1968)).

The three essential elements of piercing the veil are: (1) "complete domination, not only of finances, but of policy and business practice" respecting the conduct alleged such that the business entity had "no separate mind, will, or existence of its own"; (2) the control "must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of a plaintiff's legal rights"; and (3) the individual's "control and breach of duty must proximately cause the injury or unjust loss complained of." *See Bear Hollow, L.L.C. v. Moberk, L.L.C.*, No. 5:05-CV-210, 2006

---

WL 2306936, at *8 (M.D.N.C. Mar. 1, 2023) (explaining that the court "need not decide the choice of law issue here because [Plaintiff] has not satisfied the elements to pierce the corporate veil under either North Carolina law or Delaware law."). Therefore, the Court will draw on shared principals in both sets of case law.

WL 1642126, at *17 (W.D.N.C. June 5, 2006) (citations omitted). Other allegations that may support a veil piercing claim include inadequate capitalization, and non-compliance with corporate formalities. *Timber Integrated Invs., LLC v. Welch*, 737 S.E.2d 809, 817 (N.C. Ct. App. 2013) (citations omitted).

The degree of control must be absolute, "to the point that [Carvana] no longer has legal or independent significance of its own." *Banks v. Theodore Banks and Southern Comfort, LLC*, No. 2022-0428-PWG, 2022 WL 17261512, at *5 (Del. Ch. Nov. 29, 2022) (citation omitted). Here, the Court finds that Mountaineer Motors has not plausibly alleged that such exclusive control exists. Plaintiff's core allegation is that Garcia Senior and Garcia Junior control the vast majority of Carvana's voting power and that Garcia Junior is the CEO, Chairman, and President of Carvana. (*See* Doc. No. 40, at 11). Yet, "[m]ere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity." *Banks*, 2022 WL 17261512, at *5 (citation omitted). Similarly, Mountaineer Motors argument that the Garcias "stacked the board" with allies fails to sufficiently plead the requisite absolute control for similar reasons. (*See* Doc. No. 11).[4]

Moreover, Plaintiff must plausibly allege that the Garcias' control was used to commit fraud, violate statutory or other legal duties, or to act dishonestly in contravention of Plaintiff's

---

[4] Plaintiff states that a Delaware court found that at least one member of the Carvana Board of Directors is not independent from Garcia Senior. (Doc. No. 25, at 3) (citing *In re Carvana Co. Stockholders Litigation*, No. 2020-0415-KSJM, 2022 WL 2352457 (June 30, 2022)). However, that case did not involve claims to pierce the corporate veil, but instead involved allegations that the Garcias breached their fiduciary duties to Carvana by setting up a direct offering of common stock that was allegedly below market value. *See Id.* at *1. Moreover, in the same decision, the Chancellery Court noted that both parties agreed that half of the board members were independent and disinterested in the relevant transaction. *See Id.* at *8 ("And Plaintiffs do not challenge the independence or disinterestedness of directors Maroone, Parikh, or Quayle.").

rights. *See Bear Hollow*, 2006 WL 1642126, at *17. Even if Plaintiff has alleged facts showing that Carvana plausibly violated statutory and regulatory duties in the state of North Carolina, (*see* Doc. No. 25, at 12-13), it has not alleged that the Garcias directed such action or were otherwise personally involved in the challenged conduct. Instead, Mountaineer Motors merely recites conclusory statements that the Garcias dominate the company. *Id.* at 15.

Finally, Mountaineer Motors does not plausibly allege that the Garcias' "control and breach of duty … proximately cause[d] the injury or unjust loss complained of." *Tailored Chemical Prods., Inc. v. DAFCO Inc.*, No. 5:21-cv-00069-KDB-DSC, 2021 WL 7448761, at *4 (W.D.N.C. Dec. 8, 2021). For example, Plaintiff argues that the Garcias intended to pump up the price of Carvana stock unlawfully but does not claim that it is or was a Carvana shareholder. (*See* Doc. No. 31-1, at 17). Likewise, Plaintiff complains that Carvana and the Garcias have engaged in prior land sale transactions, but does not explain how such transactions, if impermissible, affected Plaintiff. *Id.* at 16. In short, Mountaineer Motors makes no allegations that the Garcias are personally responsible for any injury it may have suffered.

Because Plaintiff has not plausibly alleged that the Garcias exercised complete control over Carvana or that such control hurt Plaintiff's interests, it may not maintain personal jurisdiction based on its veil piercing claims, which, together with the analysis of general and specific jurisdiction above, requires the Court to conclude that this Court lacks personal jurisdiction over the Garcias.

### 2. Failure to State a Claim

The Garcias next, but similarly, ask the Court to dismiss Plaintiff's claims because Plaintiff has failed to distinguish their personal alleged wrongful conduct from the allegations against Carvana. The Garcias argue that Plaintiff has filed a "shotgun pleading" that "fails to

articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading" or which makes it "virtually impossible to know which allegations of fact are intended to support which claims for relief." *Knouse v. Primecare Medical of West Virginia*, 333 F. Supp. 3d 584, 592 (S.D.W. Va. 2018) (citing *SunTrust Mortgage, Inc. v. First Residential Mortg. Servs. Corp.*, No. 3:12-CV-162, 2012 WL 7062086, at *7 (E.D. Va. Sept. 11, 2012)). A complaint that fails to distinguish which claims are asserted against which defendants is a "quintessential" shotgun pleading. *Turton v. Va. Dep't of Educ.*, No. 3:14-CV-446, 2014 WL 12539403, at *2 (E.D. Va. Sept. 23, 2014); *see also Knouse*, 333 F. Supp. 3d at 592 (granting a motion to dismiss where the complaint made numerous allegations against defendants in the "plural sense" without distinguishing the defendants' conduct within the scope of the asserted claims).

Here, the Complaint asserts that the Garcias so dominate and control Carvana that any actions attributable to Carvana are also attributable to the Garcias. However, for the reasons discussed above, the Court finds that Mountaineer Motors has not sufficiently pled facts to pierce the corporate veil. Therefore, in the absence of independent allegations against the Garcias, the Court finds that Plaintiff has failed to meet its burden to plausibly state claims against the Garcias as individuals.

### 3.   Conclusion

Because Mountaineer Motors has not pled sufficient facts to plausibly establish that this Court has jurisdiction over the Garcias, that Carvana is the mere alter ego of the Garcias or that the Garcias have themselves engaged in tortious conduct, the Court will grant the Garcias' Motion to Dismiss.

## B.   Carvana

In its Motion to Dismiss, Carvana argues that Plaintiff's UDTPA and common law unfair competition claims must fail because Mountaineer Motors lacks standing, has failed to state a claim, and the claims are preempted because the subject matter is already subject to pervasive and intricate regulation. (*See* Doc. No. 30-1). Carvana further argues that the Lanham Act claim must fail because it is inadequately pled and is barred by the doctrine of laches. Lastly, it argues that the Licensing Law claim should be dismissed because Mountaineer Motors has failed to exhaust its administrative remedies. Mountaineer Motors replies to each argument in turn, generally arguing that it has sufficiently complied with the UDTPA's statutory requirements, that the contested advertisements are literally false and are not barred by the doctrine of laches, and that the Licensing Law claim is plausibly alleged and seeks relief wholly outside the authority and jurisdiction of the DMV Commissioner.

### 1.   UDTPA and Common Law Unfair Competition Claims

Carvana contends that Mountaineer Motor's UDTPA and common law unfair competition claims should be dismissed due to a lack of standing, failure to state a claim, and because the subject matter is already governed by a pervasive and intricate regulatory scheme. For the reasons discussed below, the Court finds that Mountaineer Motors has plausibly alleged standing regarding violations of the Licensing Law (but not standing to assert its consumer-related allegations) and that it has pled facts that plausibly state a claim for relief under the UDTPA. However, the Court also finds that Plaintiff's UDTPA and common law unfair competition claims cannot be pursued in this context because vehicle dealers are already subject to pervasive and intricate regulation under the Licensing Laws. Therefore, to permit a UDTPA claim here risks undermining the statutory and regulatory balancing of interests inherent in the

11

extensive existing regulation of vehicle dealers.  Accordingly, Plaintiff's UDTPA claim will be dismissed.

a.  <u>Standing</u>

Carvana asserts that Mountaineer Motors lacks standing because (1) it has failed to plead an antitrust injury, (2) any injury that may have occurred would harm consumers rather than Plaintiff, and (3) allowing recovery in this case risks double-recovery because consumers could bring the same claim. Mountaineer Motors argues that it has standing under both the UDTPA and the Licensing Law.[5]

The UDTPA grants standing to

any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done....

N.C. Gen. Stat. § 75-16. Although the statute may be modeled on the Sherman Act, there is no statutory requirement that a plaintiff allege an antitrust injury. *Id.* Moreover, the UDTPA "is an act often noted for the breadth of its language," *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 951 F. Supp. 1224, 1230 (M.D.N.C. 1996) (citing *Winston Realty Co., Inc. v. G.H.G., Inc.*, 70 N.C. App. 374, 381 (1984), *aff'd*, 314 N.C. 90 (1985)), and is intended to create "civil legal means to maintain ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within this State, to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State."

_____

[5] Because a common law claim for unfair competition and a UDTPA claim are "not appreciably different," the Court considers them in the same analysis. *Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc.*, 888 F. Supp. 2d 718, 721 n.1 (M.D.N.C. 2012) (quoting *BellSouth Corp. v. White Directory Publishers, Inc.*, 42 F. Supp. 2d 598, 615 (M.D.N.C.1999)).

*Nobel v. Foxmoor Group, LLC*, 868 S.E.2d 30, 34 (N.C. 2022) (quoting *Bhatti v. Buckland*, 400

S.E.2d 440, 443 (N.C. 1991)) (cleaned up). Thus, no allegation of antitrust injury is required to

have standing under the UDTPA. The Licensing Law is no different: it grants standing to "any

motor vehicle dealer who is or may be injured by a violation of a provision of this Article…"

N.C. Gen. Stat. § 20-308.1(a). Therefore, because the statutes do not require an antitrust injury,

Mountaineer Motors is not required to allege one.[6]

Taking the allegations in the Complaint as true, Mountaineer Motors has plausibly

alleged it suffered a cognizable injury. Plaintiff stated that it has "suffered and continue[s] to

suffer damages, including loss of profits and loss of market share" because it is unable to

compete with Carvana's "compliance-cost cutting." (Doc. No. 25, ⁋ 87). The Complaint further

asserts that Carvana's alleged conduct "unlawfully, unfair, and uniquely expands the inventory

of Carvana." *Id.* at ⁋ 96. This, Mountaineer Motors pled, led directly to lost sales. *See id.* at ⁋ 103

(noting a 23% decrease in sales between 2017-18 and a further 27% decrease in sales between

2018-19). Accordingly, while Mountaineer Motors' UDTPA claim will not be allowed to

proceed for other reasons, Mountaineer Motors has plausibly alleged that Carvana's conduct

proximately caused Plaintiff's injury and so it has standing to assert its UDTPA claim.

---

[6] Carvana also argues that allowing Plaintiff to bring its UDTPA claim risks double-recovery because both Mountaineer Motors and future consumer plaintiffs could sue for the same wrong. (*See* Doc. 30-1, at 9). Carvana's argument is based on a series of cases which hold that plaintiffs lack antitrust standing when they are only indirectly impacted by the alleged conduct and damages were speculative. *Id.* However, because Mountaineer Motors, as explained above, is not alleging an antitrust injury, these cases are unpersuasive. Furthermore, this would not be a case of double recovery. Mountaineer Motors is contesting conduct that consumers might themselves contest, but to the extent it does so to redress *its own* injuries, it is not a double recovery.

13

b. <u>Failure to State a Claim</u>

Carvana next argues that Mountaineer Motors has failed to state a plausible UDTPA or common-law unfair competition claim because it cannot show that Plaintiff itself relied on alleged misrepresentations to consumers and because the alleged violations of the Licensing Law are mere "legal conclusions." (*See* Doc. No. 30-1, at 11, 13). Mountaineer Motors responds that it has plausibly alleged its UDTPA claim by alleging that Carvana uses misleading advertisements and committed a series of regulatory violations, that collectively constitute unfair and deceptive practices, leading to Plaintiff's injuries. (*See* Doc. No. 40, at 16).

To state a claim for unfair and deceptive trade practices under the UDTPA, a plaintiff must plausibly allege that the Defendant engaged in "(1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately cause[d] actual injury to the plaintiff or to his business." *Harty v. Underhill*, 710 S.E.2d 327, 332 (N.C. Ct. App. 2011).

Where a UDTPA claim is based upon alleged misrepresentations or fraudulent statements, such as the claim that Carvana used misleading advertisements, the plaintiff must meet the heightened standard of Rule 9(b) and make its allegations with particularity. *See Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, at 584-85 (E.D.N.C. 2020).[7] Further, North Carolina

---

[7] Plaintiff argues that the advertisement allegations are used "primarily of the purpose of establishing how Carvana's unfair and deceptive actions are against public policy declared in the relevant state and federal laws governing used motor vehicle dealers and sales in North Carolina." (Doc. No. 40, at 23). Plaintiff contends, therefore, that it need not meet the heightened Rule 9(b) standard. The Court disagrees. In its Complaint, Plaintiff clearly and repeatedly alleges that Carvana "falsely advertised … to the consuming public" and that it "misleads customers, and, in so doing, misappropriates Plaintiff's commercial advantage …" (*See* Doc. No. 25 ¶ 138; *see also* ¶ 145). It seems disingenuous for Plaintiff to argue that its UDTPA claim is not based on

law requires that plaintiffs plead actual reliance on an alleged misrepresentation to show proximate cause. *See Bite Busters, LLC v. Burris*, 2021 NCBC 19, 2021 WL 1161316, at *10 (N.C. Sup. Ct. Mar. 25, 2021) (citing *Bumpers v. Community Bank of Northern Virginia*, 747 S.E.2d 220, 225 (N.C. 2013); *see also D C Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*, 848 S.E.2d 552, 562 (N.C. Ct. App. 2020) ("It is clear from [Bumpers] that only the direct reliance of the plaintiff is sufficient to support a UDTP[A] claim based on misrepresentation. The holding in Bumpers precludes a UDTP[A] claim ... in which a third party's reliance caused damage to the plaintiff."). Here, Plaintiff has not identified a single customer who would have bought a car from them but-for the alleged unfair and deceptive advertisements. Moreover, it has not alleged that Mountaineer Motors itself relied on any of the advertisements. Instead Plaintiff offers conclusory allegations that Carvana's advertisements "misappropriate[] Plaintiff's commercial advantage as a Bona Fide Used Car Dealer in Caldwell County…" (Doc. No. 25, ⁋ 145). Thus, the Court finds that the UDTPA claim, to the extent it is based on misrepresentations made to consumers, has not been plausibly alleged.

However, North Carolina law provides that violations of a regulatory statute, such as the Licensing Law, which governs businesses or their activities "may also be a violation of N.C. Gen. Stat. § 75-1.1." *Drouillard v. Keister Williams Newspaper Services, Inc.*, 423 S.E.2d 324, 326 (N.C. Ct. App. 1992). But, merely alleging a regulatory violation is not enough; a Plaintiff must also plausibly allege that the violation was the proximate cause of its injuries. *See id.* ("If the violation of the Trade Secrets Protection Act satisfies this three prong test, it would be a violation of N.C. Gen. Stat. § 75–1.1.").

---

misrepresentation when it specifically alleged in its Complaint that Defendants' advertisements violate the UDTPA.

Here, Mountaineer Motors alleged several violations of the Licensing Law, which taken "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," *Twombly*, 550 U.S. at 555-56 (citations omitted), could plausibly support Plaintiff's claim that Carvana has engaged in unfair and deceptive practices. Specifically, the Court notes that the DMV determined in an administrative decision that Carvana violated several sections of the Licensing Laws, including one violation which the DMV found constituted an unfair method of competition or unfair deceptive act or practice. (*See* Doc. No. 25, ⁋ 37). Also, as discussed in the standing analysis, Mountaineer Motors has plausibly alleged that Carvana's conduct hurt its own sales. In sum, at least to the extent of these elements (i.e. subject to the required further analysis of the pervasiveness of the regulations), Plaintiff could possibly meet the relatively low Rule 12(b)(6) standard to pursue its UDTPA claim.

### c. Pervasive Regulation

As noted above, while UDTPA claims may be based on alleged regulatory violations that injure competitors, there is a limit to such claims to avoid having UDTPA claims supplant an extensive regulatory scheme (and the careful balancing of remedies reflected in the regulations). Carvana argues that Plaintiff's UDTPA claims must fail because the subject matter is already subject to pervasive and intricate regulation. (*See* Doc. No. 30-1, at 17). The Court agrees with Carvana (and notes that Mountaineer Motors failed to respond to this ultimately determinative argument).[8]

---

[8] Carvana contends that Plaintiff has conceded this issue by failing to respond to the argument in its brief. (*See* Doc. No. 48, at 3). However, because the Court's strong preference is to address issues on the merits when it can reasonably do so, the argument will be discussed in full even in the absence of contrary argument.

Case 5:22-cv-00171-KDB-DCK   Document 51   Filed 10/19/23   Page 16 of 24

"North Carolina courts have refused to apply the UDTPA to ... matters already under 'pervasive and intricate regulation' by other statutory schemes that contain separate enforcement, supervisory, and remedial provisions." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 110 (4th Cir. 2016) (quoting *Hagy v. Advance Auto Parts, Inc.*, No. 3:15–CV–509–RJC–DCK, 2016 WL 5661530, at *2 (W.D.N.C. Sept. 28, 2016)). Accordingly, the UDTPA and its provision for treble damages are "inappropriate 'where there already exists an extensive regulatory regime to address the violations'" *Id.* (quoting *Hagy*, 2016 WL 5661530, at *2); *see also Skinner v. E.F. Hutton & Co. Inc.*, 333 S.E.2d 236, 241 (N.C. 1985). Where a law "provides for its own enforcement, supervision, and remediation," it is more likely that the relevant subject matter is regulated by a pervasive and intricate statutory scheme. *See Hagy*, 2016 WL 5661530, at *3 (W.D.N.C. Sept. 28, 2016) ("As noted by Defendants, the [Medicare statute] provides for its own enforcement, supervision, and remediation. Medicare [] claims are clearly regulated by a pervasive and intricate statutory scheme—the [Medicare statute]—and that scheme provides a remedy for violations and a means to obtain that remedy. On this basis, the UDTPA does not apply to Plaintiff's claims and should be dismissed.").

The Licensing Law in dispute gives the DMV the authority to "deny, suspend, place on probation, or revoke a license issued under this Article" for certain enumerated grounds, including failure to have an established salesroom, willfully defrauding any retail or wholesale buyer or using unfair methods of competition that causes actual damages to the buyer, or "[k]nowingly advertising by any means, any assertion, representation or statement of fact which is untrue…" N.C. Gen. Stat. § 20-294(3), (4), (6), (7). The DMV Commissioner is expressly authorized to "prevent unfair methods of competition and unfair or deceptive acts or practices and other violations of the [Licensing Law]." § 20-301. The law further establishes notice and

hearing requirements, *see* § 20-296, and even allows the Commissioner to levy civil penalties, *see* § 20-287(b). Moreover, the fact that the DMV *did* issue administrative findings regarding much of the subject matter in this case is further evidence that there is pervasive and intricate regulation in this area. Perhaps even more significantly, the Licensing Law provides a civil cause of action, which is further evidence that it would be inappropriate to bring a claim here under the UDTPA. *See* § 20-308.1. Thus, the Court finds that allowing the UDTPA claim to go forward would "risk improperly creating 'overlapping supervision, enforcement, and liability'" with respect to vehicle dealers. If every regulatory violation in the ultracompetitive vehicle dealer industry became a potential UDTPA violation (together with the remedy of trebled damages and possible attorneys' fees) upon the allegation of a competing dealer that it had lost sales, then the various rulings of Courts and juries would effectively replace the regulatory balance reflected in the Licensing Law. *See Champion Pro Consulting Group, Inc.*, 845 F.3d at 111 (quoting *Hagy*, 2016 WL 5661530, at *2). Therefore, Plaintiff's UDTPA claim will be dismissed.

### 2.  False Advertising Claims under the Lanham Act

Carvana argues that Plaintiff's claims under the Lanham Act fail because Mountaineer Motors has not plausibly alleged that Carvana's advertisements meet the elements of the Lanham Act and that the claim is barred under the doctrine of laches. In response, Mountaineer Motors argues that it has plausibly alleged a violation of the Lanham Act and that its claim is timely because the analogous state statute has a four-year, rather than three-year, statute of limitations.

To state a claim for false advertising under the Lanham Act, a plaintiff must plausibly argue that "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product that (2) is material and (3) actually deceives or has the tendency to deceive a substantial segment of its audience (4) after

being placed in interstate commerce, (5) causing the plaintiff injury." *First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, 672 F. App'x 229, 234 (4th Cir. 2016) (citation omitted).

First, and foremost, the advertisements at issue are not false or misleading. The contested Carvana advertisements claim that Carvana has "used cars *for sale*" in places such as Hickory, North Carolina. (Doc. No. 25, ¶165) (emphasis supplied). This is true. Indeed, Plaintiff bases its lawsuit on the allegation that Carvana made car sales to customers in Hickory and elsewhere that hurt its business. Moreover, § 20-292(b) of the Licensing Law allows motor vehicle dealers to "deliver[] a motor vehicle purchased or leased by a customer to the customer's home or place of business…" The law similarly allows the customer "to execute forms and other documents relating to vehicle purchase, lease, titling, registration, financing, insurance, … at the customer's home or place of business by any employee or authorized agent of the dealer." *Id.* Therefore, to say that a car, be it based in Charlotte or Raleigh (or anywhere else in the state, for that matter), is "for sale" in Hickory is both true and lawful, not false or misleading. Moreover, Plaintiff admits that Carvana does not advertise where the offered vehicle is physically located. (Doc. No. 25, ¶ 60). Failure to establish any one element of a false advertising claim is "fatal;" therefore, Plaintiff's Lanham Act claim cannot proceed. *See Verisign, Inc. v. XYZ.COM, LLC*, 848 F.3d 292, 299 (4th Cir. 2017) (quoting *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015)).

Even though the truth of the challenged advertisement is dispositive, the Court will address the remaining elements for the sake of completeness. The second and third elements, whether the statement is material and actually deceives its audience, fail for similar reasons. If an "advertisement is literally false, a violation may be established without evidence of consumer deception." *Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 273 (4th Cir. 2002). However,

as discussed above, this advertisement is not literally false. Because Mountaineer Motors makes no allegation that Carvana is not delivering the vehicles as advertised or that customers were told that the advertised car is physically located nearby (which they were not), Plaintiff fails to plead any sort of material consumer deception regarding these advertisements. Thus, it has failed to plausibly plead the second and third elements of the claim.

Next, the Court also finds that Mountaineer Motors has not plausibly alleged that Carvana was the proximate cause of the Lanham Act injury. "Diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014). A plaintiff can also be injured by "a lessening of goodwill associated with its product." *Verisign,* 848 F.3d at 229 (quoting *Design Res., Inc.*, 789 F.3d at 501). However, the Court must dismiss a Lanham Act claim where the complaint "does not identify a single consumer who withheld or cancelled business with it or pointed to a particular quantum of diverted sales or loss of goodwill and reputation resulting directly from reliance on any false or misleading representations by Defendants..." *Wall & Assocs. Inc. v. Better Bus. Bureau of Cent. Virginia., Inc.*, 685 F. App'x 277, 279 (4th Cir. 2017). Correlation is insufficient to show causation. *Id.* at 300-01 ("That analysis suffers from what we have identified as a "fatal flaw" in calculating Lanham Act damages: It assumes rather than demonstrates that every .xyz registration during the relevant time period was the result of XYZ's allegedly false statements…"); *see also PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 122 (4th Cir. 2011) ("The fatal flaw in Mead Johnson's economic information was that its expert assumed that every sale PBM made was attributable to the "compare to" statement on the product. As a result, Mead Johnson failed to show that it suffered damages that were caused by the statement.").

Here, Mountaineer Motors failed to allege with any specificity that a consumer who would have otherwise bought a car from Plaintiff instead bought a car from Carvana because of the advertisements. It merely asserted that its sales dropped at the same time as Carvana's presence in the North Carolina market grew. (*See* Doc. No. 25, ¶ 103). Under either the Rule 8 or Rule 9(b) pleading standards, correlation is insufficient to prove causation related to the subsequent injury.[9] Therefore, Mountaineer Motors has not plausibly alleged that Carvana violated § 1125(a) of the Lanham Act.

Moreover, the claim is barred by the doctrine of laches. The Lanham Act does not have a statute of limitations and so courts use the doctrine of laches to determine if false advertising claims are timely. *See What–A–Burger of Virginia v. Whataburger of Corpus Christi, Texas*, 357 F.3d 441, 449 (4th Cir. 2004). "When a false advertising plaintiff files suit outside of the statute of limitations, both elements of laches—unreasonable delay and prejudice—are strongly presumed." *Id.* (citing *EEOC v. The Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir.1984)). Importantly, "the presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002), *cited with approval by PBM Products, LLC*, 639 F.3d at 122. Specifically, the limitations period for the Lanham Act is borrowed from an analogous state statute. *See PBM Products, LLC*, 639 F.3d at 121 (citations omitted).

Although no court has directly addressed which North Carolina state statute is the appropriate analogue, the analogous statute for the wrongful conduct alleged here is North

---

[9] The parties disagree over whether the heightened pleading standards in Rule 9(b) apply to a false advertising claim under the Lanham Act. The Fourth Circuit does not appear to have addressed this issue, but because the Court finds that Defendant has not met even the lower Rule 8 standard, the Court need not reach this issue. *See Nutrition & Fitness, Inc. v. Mark Nutritionals, Inc.*, 202 F. Supp. 2d. 431, 434-35 (M.D.N.C. 2002).

Carolina's fraud statute. *See PBM Products, LLC*, 639 F.3d at 121 (using the Virginia fraud statute, Va. Cod. § 8.01-243(A), as the analogous state statute for a false advertising claim under the Lanham Act); *see also Unlimited Screw Products, Inc. v. Malm*, 781 F. Supp. 1121, 1125 (E.D.Va. 1991) ("A number of courts have concluded that claims under section 43(a) of the Lanham Act are most analogous to fraud claims.").[10] The North Carolina fraud statute has a three-year limitations period. *See* N.C. Gen. Stat. § 1-52(9).

Plaintiff first noticed an annual drop in sales in 2018. (*See* Doc. No. 25, ⁋ 103). However, Mountaineer Motors waited until 2022, four years later, to commence this suit, (Doc. No. 1), triggering the presumption of laches. *See Jarrow Formulas, Inc.*, 304 F.3d at 837. Mountaineer Motors provides no reason why it waited several years to file this suit, even when it alleges that it noticed another decrease in sales in 2019. In fact, Plaintiff makes no argument as to why it waited four years to file this suit. (*See* Doc. No. 40, at 31-32). Accordingly, the Court finds that Plaintiff's Lanham Act claim is also barred by the doctrine of laches.

### 3. Licensing Law Claim

Plaintiff's last claim is that Carvana violated the Licensing Law. Carvana argues that claim fails because Mountaineer Motors lacks statutory authorization to bring the suit. A Plaintiff is authorized under the Licensing Law to "bring an action for damages and equitable relief, including injunctive relief, in any court of competent jurisdiction with regard to any matter not

---

[10] Mountaineer Motors protests that the UDTPA, which has a four-year statute of limitations, is the correct analogue. (*See* Doc. No. 40, at 32). However, not only does the case Plaintiff cites involve trademark infringement and false designation of origin rather than false advertising, but the cited court decision itself noted that had the parties not both assumed a four-year limitation applied, it would have applied the three-year limitation under the North Carolina fraud statute because that was what "the court would find the statute most analogous to the Plaintiff's [claims] to be." *WorkingFilms, Inc. v. Working Narratives, Inc.*, No. 7:20-CV-00139-M, 2021 WL 1196189, at *4 n.2 (E.D.N.C. 2021).

within the jurisdiction of the Commissioner [of the DMV] or that seeks relief wholly outside the authority or jurisdiction of the Commissioner to award." N.C. Gen. Stat. § 20-308.1. The Court finds that the subject matter of this case is within the jurisdiction of the Commissioner; therefore, Plaintiff is not authorized to bring a Licensing Law claim.

Plaintiff argues that it can bring a Licensing Law claim because it seeks trebled damages. While the Commissioner does lack "the authority to award damages, let alone treble damages," those damages must be "the only relief that Plaintiff[] [is] seeking." *Southern States Imports, Inc. v. Subaru of Am., Inc.*, 2007 WL 9718537 (E.D.N.C. 2007). In other words, Plaintiff can garner its statutory authorization only by seeking forms of relief that fall "*wholly outside"* the Commissioner's authority or jurisdiction. N.C. Gen. Stat § 20-308.1 (emphasis supplied). Here, Plaintiff seeks restitution, declaratory relief, injunctive relief, and an award of reasonable attorneys' fees and costs. (Doc. No. 25, ⁋ 193). At a minimum, injunctive relief is clearly within the Commissioner's authority to grant, *see* N.C. Gen. Stat. § 20-294(3), (4), (6), (7), and so the relief Plaintiff seeks is not wholly outside the Commissioner's authority or jurisdiction. Therefore, Plaintiff's claim under the Licensing Law fails because the relief sought does not fall wholly outside the Commissioner's authority or jurisdiction.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The Garcia's Motion to Dismiss (Doc. No. 31) is **GRANTED**; and

2. Carvana's Motion to Dismiss (Doc. No. 30) is **GRANTED**; and

3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 18, 2023

Kenneth D. Bell
United States District Judge