# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO. 5:22-cv-00171-KBD-DCK

|  |  |
|---|---|
| MOUNTAINEER MOTORS OF LENOIR, LLC, D/B/A, CAR GUYS MOUNTAINEER MOTORS, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>CARVANA GROUP LLC.;<br>CARVANA, LLC;<br>CARVANA CARS, LLC;<br>CARVANA FAC LLC;<br>CARVANA LOGISTICS LLC;<br>CARVANA CO., LLC;<br>ERNEST GARCIA II;<br>ERNEST GARCIA III; and<br>DOES 1 THROUGH 10,<br><br>　　　　　Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF CARVANA'S MOTION TO ENFORCE AGREEMENT AND ALTERNATIVE MOTION FOR ATTORNEYS' FEES**<br><br>Honorable Kenneth D. Bell and David C. Keesler |

Plaintiff filed this action in an anticompetitive attempt to prohibit the online sale of vehicles in North Carolina. [Carvana's Mot. to Dismiss Plaintiff's First Am. Compl. (Doc. 30-1); Carvana's Reply in Supp. of Mot. to Dismiss (Doc. 48-1).] To that end, Plaintiff initiated a baseless false advertising claim against Carvana (1) based on an advertisement that was "true," (2) without "any sort of material consumer deception regarding the[] advertisements," and (3) despite failing to identify a single sale that Plaintiff lost as a result of Carvana's supposed conduct. [Order at 19–21 (Doc. 51); *infra* pp. 5–12.]

Plaintiff was advised of these flaws, first during the parties' meet and confer and again in Carvana's original motion to dismiss. [Cert. of Settlement Conference (Doc. 21); Carvana's Mot.

to Dismiss (Doc. 20-1); *infra* pp. 9–12.]  Indeed, Carvana explained that Plaintiff's false advertising claim failed for a host of reasons, including that: (1) Plaintiff had failed to allege how Carvana advertising vehicles "for sale" in Hickory, NC was false, and (2) Plaintiff did "not identify a single consumer who allegedly chose Carvana over Plaintiff, let alone a consumer who made such a purchase because he/she believed a vehicle was physically located near the consumer." [*See, e.g.*, Carvana's Mot. to Dismiss at 21 (Doc. 20-1).]

Plaintiff, however, neither withdrew its claim nor attempted to even address these fatal deficiencies.  [*See infra* pp. 9–12; *see also* Order at 19–20 (Doc. 51) (emphasis added) ("Because Mountaineer Motors makes ***no allegation*** that Carvana is not delivering the vehicles as advertised or that customers were told that the advertised car is physically located nearby (which they were not), Plaintiff fails to plead any sort of material consumer deception regarding these advertisements.").]  Instead, Plaintiff abused the amendment process by amending its Complaint, not to address its substantive defects, but to harass and disparage Carvana to extort a settlement through nearly 200 allegations, many of which were outlandish (and irrelevant), including regarding a "pump and dump" scheme and meritless claims against Carvana's CEO personally. [*See, e.g.*, Am. Compl. ¶ 141 (Doc. 25).]  To get the maximum leverage, Plaintiff even went to the press, and compared its lawsuit and Carvana to Enron.  [*Infra* pp. 10–11.]

Yet, despite all this, Carvana sought to avoid further litigation.  Specifically, Carvana offered to forego the recovery of its attorneys' fees if Plaintiff would simply, and finally, agree to end this litigation by foregoing any appeals of this Court's ruling. [*Infra* pp. 3–5.] **Plaintiff agreed to this proposal**, only to later equivocate about its binding agreement at the eleventh hour the day before Carvana's motion for attorneys' fees was due. [*Infra* pp. 3–5.]  As a result, Carvana has been forced to file the present motion.

For all these reasons and as set forth below, Carvana requests that the Court (1) enforce the parties' agreement to end this litigation, or (2) in the alternative, permit Carvana to recover the attorneys' fees it was forced to incur in securing the dismissal of Plaintiff's baseless Lanham Act claim.

## ARGUMENT

**I. THE PARTIES' AGREEMENT SHOULD BE ENFORCED AND PLAINTIFF'S MERITLESS LITIGATION PUT TO AN END.**

Carvana preferred to avoid further unnecessary litigation and motion practice in connection with this dispute. To that end, Carvana offered to forego its right to seek attorneys' fees if Plaintiff would simply, and finally, stop with its baseless contentions and agree not to further challenge or appeal this Court's ruling (the "Agreement"). [*See* Order (Doc. 51).] As explained below, Plaintiff unequivocally accepted Carvana's offer. [Declaration of Gregory Saetrum ("Saetrum Dec.") ¶¶ 3–11, attached hereto as Exhibit 1.] The parties' Agreement is enforceable.

Specifically, on October 25, 2023, counsel for Carvana spoke with counsel for Plaintiff regarding this matter. [Saetrum Dec. ¶¶ 3–4.] During the call, counsel for Carvana explained that Carvana would forego its application for attorneys' fees if Plaintiff would agree not to appeal or otherwise challenge this Court's ruling, allowing this matter to finally be brought to a conclusion. [*Id.* ¶ 4.] On Friday, October 27, 2023, Plaintiff's counsel responded via email acknowledging the prior call and explaining that they would like to have until Monday to discuss Carvana's offer with their client. [October 27, 2023 Email from Wisnoski, Ex. A to Saetrum Dec. ("Thanks for your call Wednesday. We'd like to have until Monday to get to [you] regarding an appeal so that we can fully discuss the options with our client.").]

On Tuesday October 31, 2023, counsel for Carvana received a call from counsel for Plaintiff. [Saetrum Dec. ¶ 6.] In response to Carvana's offer, Plaintiff's counsel expressly stated

that they were getting back to Carvana on the offer, and that Plaintiff would not appeal this Court's ruling.  [*Id.*]

Shortly thereafter, counsel for Carvana sent Plaintiff's counsel a brief confirmatory email (to avoid a dispute like this one).  [October 31, 2023 Email from Saetrum, Ex. A to Saetrum Dec.] Despite their Agreement less than two hours earlier, Plaintiff's counsel failed to respond until counsel for Carvana followed up on November 1, 2023.  [Nov. 1, 2023 Email from Badala, Ex. A to Saetrum Dec.]  At that time—just a day before the present motion was due to be filed with the Court—Plaintiff's counsel attempted to equivocate on their acceptance, claiming they needed more time to confer with their client.  [*Id.*]  Plaintiff's last-minute attempt to equivocate on the Agreement, however, should be rejected under black-letter principles of contract law.

To form a valid contract requires only an offer, acceptance, and consideration.  *Cap Care Grp., Inc. v. McDonald*, 149 N.C. App. 817, 822 (2002) ("An enforceable agreement requires an offer, acceptance and consideration.").  Outside the statute of frauds, there is no requirement that a settlement or other agreement, be reduced to writing.  *Smith v. Young Moving & Storage, Inc.*, 167 N.C. App. 487, 493 (2004) ("[T]here is no law requiring a compromise contract . . . to be put in writing.") (citations and quotation marks omitted); *Harris v. Ray Johnson Const. Co.*, 139 N.C. App. 827, 828, 830–31 (2000) (enforcing the parties' "binding oral agreement" to settle plaintiff's claim).

Here, the parties' Agreement satisfies all elements of a valid contract.  Carvana made an offer to forego its attorneys' fees application in exchange for Plaintiff foregoing any challenge to this Court's order.  [*Supra* pp. 3–4; Order (Doc. 51).]  Carvana's offer, and the parties' Agreement, was supported by consideration, including Carvana's agreement to forego its attorneys' fees application.  *See Pitts v. Broyhill,* 88 N.C. App. 651, 657 (1988) (explaining that consideration

exists where, among other things, one "refrains from doing anything he has a right to do") (citations omitted). And Plaintiff accepted Carvana's offer, as set forth above. [*Supra* pp. 3–4.] In fact, when confronted with the history of the Agreement, Plaintiff's counsel did not dispute the parties' negotiations or their previous agreement. [Nov. 1, 2023 Email from Saetrum, Ex. A to Saetrum Dec. (setting forth the parties' previous agreement); Nov. 1, 2023 Response Email from Badala, Ex. A (failing to dispute the Agreement).]

The Agreement is thus valid, binding, and should be enforced by this Court. *Smith,* 167 N.C. App. at 493 (enforcing settlement agreement where "[t]he facts indicate that plaintiff and defendant orally agreed to settle their dispute"); *Harris*, 139 N.C. App. at 828, 830–31 (enforcing the parties' "binding oral agreement" to settle plaintiff's claim).

## II.      IN THE ALTERNATIVE, CARVANA IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES UNDER THE LANHAM ACT.

As set forth further below, Plaintiff's false advertising claim was groundless, and Plaintiff conducted this litigation unreasonably. In the event that the Court does not enforce the parties' Agreement (*supra* pp. 3–5), Carvana is permitted to recover the attorneys' fees it was forced to incur in connection with this proceeding.

### A.      <u>Plaintiff's Untenable Positions And Unreasonable Litigation Tactics Warrant The Recovery Of Attorneys' Fees Here.</u>

Under the Lanham Act, the prevailing party may recover its attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). An "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015) (applying "*Octane Fitness . . .*

when considering the award of attorneys' fees under § 1117(a)"); *Verisign, Inc. v. Xyz.com LLC*, 891 F.3d 481, 487 (4th Cir. 2018) (The "losing party's conduct need not have been independently sanctionable or taken in bad faith in order to merit award of attorney fees" under the Lanham Act).

There is "no precise rule or formula for making [this] determination[]." *Octane Fitness, LLC*, 572 U.S. at 554 (quotation marks omitted). Instead, courts must consider the "totality of the circumstances," and generally assess whether "there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable," whether "the non-prevailing party has litigated the case in an unreasonable manner," or if there is a need "to advance considerations of compensation and deterrence." *Georgia-Pacific Cons. Prod. LP*, 781 F.3d at 721 (citations and quotation marks omitted). Under any one of these factors, Carvana should be permitted to recover its attorneys' fees here.

Substantively, Plaintiff's Lanham Act claim was objectively unreasonable. To state a claim for false advertising under the Lanham Act, a plaintiff must allege facts showing that: (1) the defendant made a false or misleading representation of fact in a commercial advertisement about his own product; (2) the misrepresentation is material; (3) the misrepresentation actually deceived or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. *Verisign, Inc. v. Xyz.com LLC*, 848 F.3d 292, 298–99 (4th Cir. 2017). Failure to establish even ***one*** element of a false advertising claim is "'fatal.'" *Id.* at 299 (quoting *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015)); [Order at 19 (Doc. 51).]

Yet, even after amending its complaint, Plaintiff could not plead *four of the five elements*, and thus the Court dismissed Plaintiff's Lanham Act claim in its entirety. [Order at 18–22 (Doc. 51) (discussing Plaintiff's failure to sufficiently plead elements one, two, three, and five of the Lanham Act)]; *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1336 (11th Cir. 2001) ("Plaintiff's failure to present sufficient evidence on four of the five Lanham Act elements . . . support the district court's conclusion that this case was an exceptional case justifying an award of attorney's fees."). As this Court held:

- Carvana's advertisement of its vehicles as available "'for sale' in Hickory is both true and lawful, not false or misleading." [Order at 19 (Doc. 51).]

- Plaintiff failed to identify "any sort of material consumer deception" and thus "failed to plausibly plead the second and third elements of the [false advertising] claim." [*Id.* at 20.]

- Plaintiff failed to plead proximate cause as it could not identify a single "consumer who would have otherwise bought a car from Plaintiff [but] instead bought a car from Carvana because of the advertisement." [*Id.* at 21.]

- And, in any event, Plaintiff's false advertising claim was barred under the doctrine of laches. [*Id.* at 21–22.][1]

Indeed, the very core of Plaintiff's false advertising claim was fatally flawed from the start. Plaintiff's Lanham Act claim was premised on Carvana advertising "used cars for sale" in places such as Hickory, North Carolina. [*See* Compl. ¶¶ 4, 20, 21, 31, 44 (Doc. 1).] Plaintiff alleged this

---

[1] Plaintiff attempted to avoid dismissal on this basis by expressly misstating applicable authority. [Order at 22 n.10 (Doc. 51) ("[N]ot only does the case Plaintiff cites involve trademark infringement and false designation of origin rather than false advertising, but the cited court decision itself noted that had the parties not both assumed a four-year limitation applied, it would have applied the three-year limitation under the North Carolina fraud statute because that was what 'the court would find the statute most analogous to the Plaintiff's [claims] to be.'").]

advertisement was false because Carvana's vehicles were physically parked somewhere else and that Carvana advertised these vehicles for sale "from fictious and unlicensed locations." [*Id.* ¶¶ 22, 26, 31, 47, 63, 72(b); Pl.'s Opp. to Carvana's Mot. to Dismiss Am. Compl. at 19 (Doc. 40) ("Carvana is still acting illegally since it continues to advertise off-site sales through off-site, unlicensed, and fictitious locations.").]

Yet, as this Court held, Carvana's advertisement of "used cars for sale" in places such as Hickory, North Carolina "*is true*." [Order at 19 (Doc. 51) (emphasis added).] In fact, Plaintiff's own Complaint expressly admitted that Carvana does not advertise "where the offered vehicle actually is," thus conceding that could not possibly engage in false advertising with respect to where its vehicles are available for sale. [Am. Compl. ¶ 60 (Doc. 25).] And, to date, Plaintiff has still failed to identify any factual basis or advertisement referencing the "fictious" locations that Plaintiff baselessly alleged through its proceedings. [*Id.* ¶ 61 (emphasis added) (alleging that "*these advertisements* referencing off-site, fictitious, and unlicensed locations" violate the Licensing Law, but failing to actually identify any such advertisements).] Plaintiff's false advertising claim was thus substantively baseless. *See Tire Kingdom, Inc.*, 253 F.3d at 1336 (case was "exceptional" under the Lanham Act because plaintiff "failed to present 'a scintilla of evidence' of materiality or reliance"); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002) (awarding attorneys' fees under the Lanham Act because "the statements in the advertisements at issue were true and the [unsuccessful party] had no reasonable basis to believe they were false").

Counsel for Carvana explained this fundamental flaw in Plaintiff's claim, among others, during the parties' meet and confer before Carvana filed its original motion to dismiss. [Cert. of Settlement Conference (Doc. 21).] And Carvana also set forth the numerous flaws in Plaintiff's

Complaint in its original motion to dismiss. [Carvana's Mot. to Dismiss (Doc. 20-1).] Specifically, Carvana's original motion to dismiss explained that Plaintiff's false advertising claim failed for a host of reasons, including that: (1) Plaintiff had failed to allege how Carvana advertising vehicles "for sale" in Hickory, NC was false, and (2) Plaintiff did "not identify a single consumer who allegedly chose Carvana over Plaintiff, let alone a consumer who made such a purchase because he/she believed a vehicle was physically located near the consumer." [*See, e.g.*, *id.* at 20–21.]

Plaintiff, however, did not withdraw its meritless claim. Nor did Plaintiff address these substantive flaws through amendment. *See, e.g., Allegheny Coupling Co. v. Betts Indus., Inc.*, No. CA 06-76, 2011 WL 1230151, at *7 (W.D. Pa. Mar. 31, 2011) ("[A] suit . . . may become 'exceptional' enough to warrant an award of attorney's fees if the litigant continues to pursue the claim once it becomes clear that there is no evidence to support it.") (cleaned up).

On the contrary, Plaintiff forced Carvana to file the original motion to dismiss, then never bothered to respond to Carvana's original motion, and then filed its Amended Complaint. [*See* Carvana's Mot. to Dismiss (Doc. 20-1); *see also* Am. Compl. (Doc. 25).] Plaintiff's Amended Complaint: (1) expressly admitted (at ¶ 60) that Carvana does not advertise "where the offered vehicle actually is," thus conceding that Carvana could not possibly engage in false advertising with respect to where its vehicles are available for sale, and (2) did not even attempt to address the fact that Carvana's website makes clear that vehicles are often shipped to buyer's locations, and thus are not physically located at the buyer's location. [Carvana's Mot. to Dismiss at 18 (Doc. 20-1) (explaining that Carvana's website requests a buyer's zip code so Carvana can provide "the most accurate ***shipping cost and delivery estimates*** based on your location").]

Likewise, Plaintiff's Amended Complaint did not even attempt to satisfy the second and third elements of their false advertising claim. [Order at 19–20 (Doc. 51) (emphasis added) ("Because Mountaineer Motors makes ***no allegation*** that Carvana is not delivering the vehicles as advertised or that customers were told that the advertised car is physically located nearby (which they were not), Plaintiff fails to plead any sort of material consumer deception regarding these advertisements.").] And, despite amendment, Plaintiff still could not identify a single customer who supposedly purchased a vehicle from Carvana instead of Plaintiff based on the allegedly false advertisements, as required to state a legitimate Lanham Act claim. *See, e.g.*, *Verisign, Inc.*, 848 F.3d at 300 ("[T]he indispensable fifth element of a Lanham Act claim is that 'the plaintiff has been or is likely to be injured as a result of the [alleged] misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its product.'").

Recognizing the lack of substance to its claim, and to gain settlement leverage, Plaintiff's Amended Complaint dredged up thirty-year-old events regarding Carvana's CEO and his father that had no bearing on this matter. [*See, e.g.*, Am. Compl. at ¶¶ 4–13 (Doc. 25)]; *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014), *aff'd*, 811 F.3d 479 (Fed. Cir. 2016) (applying the *Octane Fitness* factors to award attorneys' fees in a patent case because the unsuccessful party's "motivation in this litigation was to extract a nuisance settlement"). In fact, despite that Plaintiff's claim was purportedly about Carvana misrepresenting the physical location of its vehicles, Plaintiff spent pages of its Amended Complaint discussing decades-old matters involving entirely separate companies and recklessly accusing Carvana of inflating its share price. [*See, e.g.*, Am. Compl. at ¶¶ 4–13 (Doc. 25).] Plaintiff's counsel then went to the press to get maximum leverage, making reckless comparisons between Carvana (a publicly-traded company) to Enron:

"Like Enron, when one looks behind the curtain of Carvana, you realize the whole thing is

a clout-based share-price driving scheme, one which has made the Garcia family billions—

because of the objectively false advertising and other unfair or deceptive trade practices

that allowed Carvana to illegally seize market share away from legitimate and law-abiding

dealers in North Carolina, and nationwide. Carvana and the Garcias' respective motions to

dismiss are without legal substance and last-ditch efforts to distract from reality. We

anticipate the Court will be able to see through the continued smoke and mirrors show that

has been the status quo of this failing company for years, and Ernest Garcia II for decades."

[Law360 Quote Nevin Wisnoski on Carvana Lawsuit, *available at* https://www.napolilaw.com/

whitepapers/law360-quotes-nevin-wisnoski-on-carvana-lawsuit/, attached hereto as Ex. 2.]

The Court, however, held not only that it lacked jurisdiction over Carvana's CEO and his

father, but also that Plaintiff failed to plausibly allege a basis for piercing the corporate veil and

that Plaintiff's 193-paragraph "shotgun pleading" did not state a claim against the Garcia's

personally. [Order at 4–10 (Doc. 51).]

Plaintiff's baseless false advertising claim, its refusal to address the deficient allegations

raised in the meet and confer process or in its Amended Complaint, and its resorting to statements

in its pleadings and to the press were inappropriate. Plaintiff's unsupported false advertising claim,

together with its conduct in unnecessarily forcing motion practice and additional fees, permit

Carvana to recover the fees it has incurred here. *Tire Kingdom, Inc.,* 253 F.3d at 1336 ("Plaintiff's

failure to present sufficient evidence on four of the five Lanham Act elements, coupled with

evidence of bad faith and improper motive, support the district court's conclusion that this case

was an exceptional case justifying an award of attorney's fees."); *Allegheny Coupling Co.*, 2011

WL 1230151, at *7 ("[A] suit . . . may become 'exceptional' enough to warrant an award

of attorney's fees if the litigant continues to pursue the claim once it becomes clear that there is no evidence to support it.") (cleaned up).

## III.    THE ATTORNEYS' FEES SOUGHT ARE REASONABLE.

Carvana is entitled to recover is reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (setting forth factors to consider in determining reasonableness of the rate and hours).

Here, as explained below as well as in further detail in the declaration of Gregory T. Saetrum, Carvana's counsel (the "Saetrum Dec."), the rate charged by Carvana's attorneys are reasonable and consistent with prevailing rates for similar matters, and the hours expended were justified in light of the nationwide class allegations, the over 300 allegations set forth in Plaintiff's two separate complaints, and the additional time required as a result of Plaintiff not dismissing this matter after the meet and confer, nor after the motion to dismiss was filed, and instead doubling down and forcing Carvana to file a second motion to dismiss to address Plaintiff's Amended Complaint.  Additional detail regarding the services provided are set forth in the itemized statement attached as Exhibit B to the Saetrum Dec.

For these reasons and as further set forth below, Carvana is entitled to recover the reasonable attorneys' fees it incurred to successfully defend Plaintiff's Lanham Act in the amount of no less than $80,174.06.  Carvana will supplement this request with the attorneys' fees incurred in preparing this motion, particularly in light of Plaintiff's conduct as described above.  [*See supra* pp. 3–5.]

A.     <u>Carvana's Counsel's Rates Are Reasonable.</u>

In determining whether the requested hourly rate is reasonable, courts have found the following factors to be particularly relevant: (1) the customary fees for such services; (2) the experience, reputation, and ability of the attorneys; and (3) the skill required to properly perform the legal services. *See, e.g., Coppedge v. Franklin Cnty. Bd. of Edu.*, 345 F. Supp. 2d 567, 576 (E.D.N.C. 2004).

Here, the rates set forth in this motion reflect what was actually charged and collected from Carvana. *See ABC, Inc. v. Primetime 24*, 67 F. Supp. 2d 558, 564 (M.D.N.C. 1999), *aff'd*, 232 F.3d 886 (4th Cir. 2000) ("The Fourth Circuit has directed that the determination of prevailing market rates in the relevant community is fact-intensive and best guided by what attorneys earn from paying clients for similar services in similar circumstances."); *Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 179–80 (4th Cir. 1994) (holding that evidence that plaintiff's out-of-state attorneys' rates were charged to and actually paid by plaintiff, and that persons involved in charging and paying rates believed them to be reasonable was sufficient to establish prevailing market rate for services charged by the attorneys); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) ("Recall that the objective is to find the reasonable fee for the work. When the lawyers sell their time in the market, the market provides the starting point: the lawyer's hourly rate.").

Moreover, as set forth in Saetrum Declaration, the rates charged are reasonable for lawyers at comparable firms. [Saetrum Dec. ¶¶ 18–19]; *Bear Rock Franchise Sys., Inc. v. Hedlund*, No. 5:08-CV-63-F, 2008 WL 2551328, at *2 (E.D.N.C. June 25, 2008) ("A reasonable hourly rate is one that is at the prevailing market rate in the relevant community.") (cleaned up). Indeed, similar rates are routinely sought by counsel and approved by courts throughout the Fourth Circuit,

including North Carolina. *Johnson v. Palms Assocs.*, No. 1:20-CV-1049, 2023 WL 5276348, at *4 (M.D.N.C. Aug. 16, 2023) (approving an hourly rate of $700 in class action litigation and explaining that "[o]ther courts in this District have accepted rates of $700 per hour for attorneys in particularly complex cases"); *Linnins v. Haeco Am., Inc.*, No. 1:16CV486, 2018 WL 5312193, at *3 (M.D.N.C. Oct. 26, 2018) (citing cases approving rates between $600-$975 per hour).

Furthermore, the hourly rates Squire charged Carvana are appropriate in light of the nature of this case. [Saetrum Dec. ¶¶ 18–22.] Plaintiff purported to assert nationwide false advertising claim against Carvana on behalf of a class consisting of "all individuals or entities (irrespective of business form) in the 50-states duly licensed by their respective State's law to operate as dealerships for the marketing and sales of used motor vehicles at any time from four years prior to the commencement of this action, or such other time as deemed proper by the Court." [Compl. ¶ 67 (Doc. 1); Am. Comp. ¶ 124 (Doc. 25).] And Plaintiff sought injunctive relief prohibiting Carvana from advertising the commercial availability of its products. [Compl. ¶ 102 (Doc. 1); Am. Compl. ¶ 180 (Doc. 25).]

B.     **The Number of Hours Expended to Successfully Defend Plaintiff's Lanham Act Claim is Reasonable.**

In determining whether the number of hours expended are reasonable, a "critical factor" is "the degree of success obtained." *ABC, Inc.*, 67 F. Supp. 2d at 566 (citations and quotation marks omitted); *Hensley*, 461 U.S. at 435 (explaining that where complete success is obtained a compensatory fee award "will encompass all hours reasonably expended on the litigation").

Here, with respect to Plaintiff's false advertising claim, the Court found that plaintiff's allegations failed on four separate grounds, including lack of falsity, lack of customer confusion, lack of proximate causation, and laches. [Order at 18–22 (Doc. 51).]

Moreover, Plaintiff's complaints include a combined total of over 300 allegations and 80 pages. [*See* Compl. (Doc. 1); Am. Compl. (Doc. 25).] Counsel for Carvana was thus required to expend substantial time and effort to effectively respond these over 300 allegations to prevent further unnecessary litigation, particularly on a nationwide basis. [Carvana's Mot. to Dismiss (Doc. 20-1); Carvana's Mot. to Dismiss Am. Compl. (Doc. 30-1); *see Sara Lee Corp. v. Bags of New York, Inc.,* 36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999) (explaining that "protraction of judicial processes" resulting in "needless expense" supports an award of attorneys' fees under Section 1117(a)).

Finally, counsel for Carvana has taken several steps to ensure reasonableness. As further detailed in the Saetrum Declaration, during the course of its representation Squire reduced the fees charged to Carvana to avoid unnecessary, duplicative, or excessive time and, in conjunction with preparing this motion, Squire eliminated time devoted to Plaintiff's other, non-Lanham Act, claims.

## Conclusion

For the foregoing reasons, Carvana hereby requests that the Court order Plaintiff to reimburse Carvana for $80,174.06 in attorneys' fees they incurred to successfully defend against Plaintiff's Lanham Act claim pursuant to 15 U.S.C. § 1117(a).

RESPECTFULLY SUBMITTED this 2nd day of November, 2023.

*/s/ Gregory T. Saetrum*
Gregory T. Saetrum (*pro hac vice*)
gregory.saetrum@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: (602) 528-4881
Facsimile: (602) 253 8129

Margaret L. Booz (NC Bar No. 57779)
margaret.booz@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, DC 20037
Telephone:      (202) 457-6505
Facsimile:      (202) 457-6315

*Attorneys for Defendants*

## MEET AND CONFER CERTIFICATION

Pursuant to LRCiv 7.1(b), the undersigned hereby certifies that before filing this motion, the parties conferred and attempted in good faith to resolve areas of disagreement as further explained in Section I above.

/s/ _Gregory T. Saetrum_
Gregory T. Saetrum (*pro hac vice*)
gregory.saetrum@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: (602) 528-4881
Facsimile: (602) 253 8129

Margaret L. Booz (NC Bar No. 57779)
margaret.booz@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, DC 20037
Telephone:      (202) 457-6505
Facsimile:      (202) 457-6315

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 2, 2023 a copy of the foregoing was filed electronically via CM/ECF with the United States District Court, Western District of North Carolina, with notification being sent electronically to all counsel of record.

/s/ *Gregory T. Saetrum*

Gregory T. Saetrum (*pro hac vice*)
gregory.saetrum@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: (602) 528-4881
Facsimile: (602) 253 8129

Margaret L. Booz (NC Bar No. 57779)
margaret.booz@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, DC 20037
Telephone:    (202) 457-6505
Facsimile:    (202) 457-6315

*Attorneys for Defendants*